THE CONNECTICUT TRUST AND SAFE DEPOSIT COMPANY, ADMINISTRATOR, *vs.* JAMES B. T. CHASE ET AL.

First Judicial District, Hartford, May Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A negotiable note, reading "we, trustees of the Riverview Heights Company, . . . in accordance with section six of a declaration of trust, recorded," etc., "promise to pay," etc., does not bind the signers personally, if section six expressly excludes any personal liability on such contracts.

A legacy is adeemed or revoked by acts of the testator, before his death, only when he so deals with the subject of the bequest as to render it impossible to effect the transfer or payment directed by the will ; or gives to the legatee what he had bequeathed him.

A testatrix owning several tracts of land, also real estate mortgages for money loaned, and shares of stock in sundry corporations, devised Whiteacre to an ecclesiastical society, provided it built thereon within ten years. By the 7th clause of her will she provided that Blackacre should be sold by her executors and the proceeds used to pay the legacies therein given, amounting to about $25,000 and including $6,000 to each of her two daughters, all of which were to abate *pro rata* in case of a deficiency. Prior to her decease she sold both of said tracts for $85,000, taking in part payment a note for $65,000 secured by a mortgage of the land sold, but without any personal liability upon the part of the makers of the note. At

her death $35,000 of this sum was unpaid, and was collectible from
the security.   *Held :—*

1. That the sale of Whiteacre made it impossible for the ecclesiastical
   society to fulfil the conditions of the devise to it, and therefore that
   devise was clearly revoked.

2. That the sale of Blackacre did not prevent but rather facilitated
   the payment of the legacies charged by the will upon it, since the
   $35,000 secured by the mortgage upon the same land furnished a
   fund which was available for that purpose.

Under an earlier clause of the will giving the daughters the income on
all "loans" secured by real estate, during their respective lives,
they claimed the income on said $35,000, or at least the income of
the surplus after paying the legacies.   *Held* that inasmuch as noth-
ing had ever been lent, and as no one was personally liable on the
purchase note for $65,000, the transaction could not, strictly speak-
ing, be called a "loan" ; nor was there anything in the other pro-
visions of the will which indicated that the word had been used
in other than its strict, primary meaning.

When a word used in a will has a strict and primary meaning and also
a secondary meaning, it is a sound rule of construction that it is to
be given the former, unless the context indicates that the testator
intended otherwise ; if, thus understood, the provisions of the will,
as applied to his estate, would have an intelligible and sensible im-
port.

Debenture certificates issued by a corporation for money borrowed by
it, although convertible into its stock at the holder's option, at a
date subsequent to his death, are not "stock," and therefore do
not pass under a bequest of all his "stocks" in any and all corpo-
rations.

In the 9th clause of her will the testatrix directed her executors to
sell her Hartford house and "from the avails" pay specified sums
for the care of certain burial lots.   In connection therewith and in
the same clause, the testatrix "also" gave $500 to a church in Crom-
well, as a memorial to her parents.   *Held* that the legacy to the
church was payable only from the avails of the sale of such house.

Argued May 5th—decided June 10th, 1903.

ACTION by an administrator *cum testamento annexo*, for
the construction of the will of Cornelia S. Chase of Hartford ;
brought to the Superior Court for Hartford County and re-
served (*Shumway, J.*) for the advice of this court.

The will was dated March 1st, 1895.   The testatrix died
December 10th, 1901.   She was a widow with two adopted
daughters.   After giving legacies to a step-son and a sister
of her husband, she gave her daughters "the income, during

their respective lives, each one-half thereof, of all my stocks in any and all corporations, except those hereinbefore specifically bequeathed, together with the income from any and all loans secured by mortgage upon real estate," with remainders over. She then devised to them a lot on Belmont Avenue in Springfield; and to the First Baptist Church of Springfield a lot on Fort Pleasant Avenue in Springfield, provided it should build a church and parsonage thereon within ten years, in which case it was to receive also $5,000, all this to be a memorial of her husband. The will also contained the following provisions: "7. As soon as a favorable opportunity arrives therefor, I direct my executor to sell my real estate situated on the southerly side of Fort Pleasant Avenue, except that specifically bequeathed, being all my land in Springfield, and being the same shown upon a plan thereof prepared by George N. Merrill, and I direct that from the proceeds of such sale six thousand dollars ($6,000.00) be given to each of my daughters above mentioned, to the end that they may purchase homes for themselves; one thousand dollars ($1,000.00) to Sarah Thornton Chase of Newport, R. I.; one thousand dollars ($1,000.00) to Jessie Chase of said Newport; four thousand dollars ($4,000.00) to William Jotham Chase, son of J. B. T. Chase, the same to be expended upon his education; five hundred dollars ($500.00) to John Santry of New Haven, Conn.; one hundred and fifty dollars ($150.00) to his sister, Mrs. Geo. Martin of Lebanon, Conn.; one hundred dollars ($100.00) to Ann Connolly of Hartford, Conn.; one thousand dollars ($1,000.00) each to Elizabeth and Bertha Marshall, sisters, both of Springfield, Mass.; two hundred dollars to Mrs. Mahlon Chichester of Shelter Island, Conn. ($200.00); six hundred and seventy dollars ($670.00) to the State Bank of Hartford, Conn.; five hundred dollars ($500.00) to Mrs. Alonzo Hamilton of Dorchester, Mass.; one thousand dollars ($1,000.00) to Mrs. Eliza Marshall of Springfield, Mass.; five hundred ($500.00) to Mrs. Harriet Wetherell of Chicago, Ill.; one thousand dollars ($1,000.00) each to Cornelia Chase Thompson and Harold G. Thompson of Williamantic,

Conn.; two hundred dollars ($200.00) to my cousin, Bessie Adams of Cromwell, Conn.

"In case the avails of the sale of said real estate should not be sufficient to pay all the bequests named in this article they are all to abate *pro rata*.

\*       \*       \*       \*       \*       \*       \*       \*

"9. My house in Hartford, 76 Church Street, I direct to be sold at such time as my executor shall deem expedient, and from the avails thereof, unless before my death I make provision for the perpetual care of the lots, graves, and monuments hereinunder referred to, there shall be given to the Spring Grove Cemetery Association of Hartford the sum of five hundred dollars ($500.00) for the perpetual care of the lot in its cemetery conveyed to my brother Samuel, being the lot in which he is buried, and for the perpetual care of the Luther Savage lot in the Old North burying-ground. I also direct that the family of James B. T. Chase of Springfield, Mass., have the right of burial in the above-named Spring Grove Cemetery lot, on the west side of the monument, south of the graves of the Chase family. I direct that the family of Albert G. Thompson of Williamantic, Conn., have the right of burial in said lot, south of the gate. I also direct that my daughter, Mrs. Ada Chase Hillman, and her husband, have the right of burial in said lot, on the northwest side, next to the grave of Jessie Maria Chase. Should Ann Connolly of 76 Church Street, Hartford, Conn., desire it, I direct that she have a burial place in said lot, her grave to be at the foot of that of Miss M. L. Savage, second tier.

"From the avails of said house I also give to the town of Cromwell, Conn., the sum of five hundred dollars ($500.00), the interest of which is to be expended for the perpetual care of the grounds and graves of the Savage and Gridley families in the old burying ground, once called the North Society, now of Cromwell.

"I also give as a further memorial for my parents, Jesse and Maria Savage, five hundred dollars ($500.00) to the

Baptist Church of Cromwell, the interest of which is to be used for the benefit of the church.

"Whatever remains from the sale of my house in Hartford after payment of the specific bequests hereintofore named therefrom, I give and bequeath in the name of my sister, Maria L. Savage, in equal shares, to the Connecticut Baptist Education Society, the Connecticut Literary Institution of Suffield, Conn., the American Baptist Missionary Union, the American Baptist Home Mission Society, the Woman's Baptist Foreign Missionary Society connected with the First Baptist Church of Hartford, Conn., the Woman's American Baptist Home Mission Society connected with the First Baptist Church of Hartford, Conn."

There was a general residuary devise and bequest in favor of certain charities.

On June 15th, 1897, the testatrix sold and conveyed all her land on Fort Pleasant Avenue to James D. Safford and four others, as trustees of the Riverview Heights Company, for $85,000, and in part payment took a note * for $65,000, secured by a mortgage, of the same date, to her of the land.

A declaration of trust by the trustees in favor of the shareholders of the Riverview Heights Company was recorded, as stated in the note, and its 6th section provided that "the trustees shall have no power to bind the shareholders personally, and in every written contract they shall enter into, reference shall be made to this declaration of trust, and the person or corporation contracting with the trustees shall

---

* The following is a copy of the note:

$65,000.                  Springfield, Mass., June 15, 1897.

Seven years after date, for value received, we, the trustees of the Riverview Heights Company, according to a Declaration of Trust, recorded in Hampden County Registry of Deeds, and in accordance with Section six (6) of said Declaration, promise to pay Cornelia S. Chase, or order, Sixty-five Thousand Dollars, with interest semi-annually at the rate of five per cent. per annum.

| | |
|---|---|
| James D. Safford, | Trustees |
| Edwin A. Carter, | of the |
| Louis F. Newman, | Riverview |
| Christopher I. Gagnier, | Heights |
| Pierre Angers. | Co. |

look only to the funds and property of the trust for payment under such contract, or for the payment of any debts, damage, judgment, or decree, or of any money that may otherwise become due and payable by reason of the failure on the part of said trustees to perform such contract in whole or in part, and that neither the trustees nor the shareholders present or future in this company shall be personally liable therefor."

Prior to her death the testatrix received partial payments upon the principal of said mortgage indebtedness, and released certain portions of said land from the obligation of said mortgage, in pursuance of an agreement made between the testatrix and the mortgagors, dated June 15th, 1897. At the time of her death the amount unpaid upon the principal of said mortgage note was $35,000. There was no evidence as to what she did with the $50,000 which she had received of the purchase money. On February 23d, 1901, in consideration of the personal guaranty by said James D. Safford of the payment of the balance then due on the note with interest at $4\frac{1}{4}$ per cent., she reduced the rate of interest to that figure.

Up to the time of her death she remained on friendly terms with all the legatees named in clause 7 of her will, and was desirous that William Jotham Chase, a boy who was her stepson's child, should receive a liberal education.

Before her death she also sold and conveyed the lot on Belmont Avenue.

When she made her will, and at her death, she owned sundry mortgages of real estate given her for money lent. At her death she owned debenture certificates of the New York, New Haven and Hartford Railroad Company, of the par value of $2,000, issued for money borrowed, bearing interest at the rate of four per cent. and convertible after ten years, at the option of the holder, into shares of stock of the company, of the same par value, and if he did not avail himself of the option, then payable in cash in fifteen years. She also owned stocks in sundry corporations, not specifically bequeathed, of the value of over $33,000.

The amount due on the note at the death of the testatrix was so secured as to be collectible.

*John T. Robinson*, for the plaintiff.

*Charles Phelps*, for Corinna Josephine Chase Thompson *et al.*

*Jonathan Barnes* of Springfield, Mass., with whom was *J. Warren Johnson*, for James B. T. Chase *et al.*

*William Waldo Hyde*, for Eliza M. Marshall *et al.*

*William Bro Smith*, for the Connecticut Literary Institution.

*D. W. Perkins* of New York City, for the American Baptist Home Mission Society *et al.*

BALDWIN, J.   The legacies given in clause 7 of the will were not adeemed by the sale of the Fort Pleasant Avenue property.

The purchase price was not fully paid, and, by reason of the mortgage back, the testatrix remained always invested with a legal title to the land.   *Searle* v. *Sawyer*, 127 Mass. 491.   The balance due her, and evidenced by the mortgage note, no one was originally under any personal obligation to pay.   The declaration of trust was so referred to in the note as virtually to become a part of it, and excluded any personal liability on the part of the trustees.   The testatrix could only look to the funds and property of the Riverview Heights Company, and it does not appear that it owned anything except what it acquired by the purchase from her. *Shoe & Leather Nat. Bank* v. *Dix*, 123 Mass. 148, 151.   A few months before her death she obtained for a consideration a guaranty from one of the trustees ; but if the legacies were not adeemed by the sale, they were not adeemed by her thus adding to her security for the balance of the purchase money.

The land sold comprised one parcel which she had conditionally devised to the First Baptist Church, and another which she had directed her executor to sell at the first favorable opportunity for the purpose of raising money to pay certain bequests. The sale rendered it impossible for the First Baptist Church to fulfil the conditions of the devise to it. That devise was therefore clearly revoked by the conveyance to the trustees. But the sale facilitated the payment of the legacies. It provided a sufficient fund to meet them, if it can be used for that purpose; whereas the will contemplated a possible deficiency. This fund was nothing but a charge upon the land described in clause 7, and on that which had been the subject of the revoked devise to the church; or possibly a charge upon these lands and other property of the Riverview Heights Company. It has not been contended by any of the parties before us that there is not enough of the land decribed in clause 7, remaining unsold by the trustees of the Riverview Heights Company and subject to the mortgage lien, to make it certain that the amount necessary to satisfy these legacies (about $25,000) can be collected upon the note; and for the purposes of this decision the mortgage may be regarded as if it rested solely upon such land.

A total ademption by acts of a testator occurs in two cases only: (1) when he gives in his lifetime to a legatee what he had left him in his will; or (2) when before his death he so deals with the subject of the bequest as to render it impossible to effect the transfer or payment which the will directs. In the case at bar, it was admitted by the counsel for all the residuary legatees who appeared at the hearing, that none of the legacies provided for by clause 7 were paid by the testatrix. The finding shows that her dealings with the subject of the bequest have changed its form but not its substance. The same land remains under the power of her executor. He can use it to satisfy the legacies, not indeed, in the first instance, by selling it, but by requiring its present owners, as a condition of their retaining title, to pay to him a sum sufficient to discharge them.

In *Arnald* v. *Arnald*, 1 Brown's Ch. Ca. 401, 2 Dickens,

645, Lord Chancellor Thurlow held that a devise to trustees to sell and pay the proceeds to certain beneficiaries was rendered inoperative in their favor by a sale of the land subsequently made by the testator himself. That was a case where a conveyance of the legal title to one, while ambulatory and so in the nature of an undelivered deed, was revoked by a later conveyance of the legal title to another, by a deed which was delivered. The will was a conveyance; the deed was a conveyance; and, after the deed was delivered, the subject of the testamentary conveyance was absolutely and forever removed from the control of the testator. In the case at bar, the legal title was never devised to the executor. He had merely a power. The object of the power was a conversion, and as to any question of succession under such a will, the conversion is to be regarded as if made at the instant of the testator's death. *Bates* v. *Spooner*, 75 Conn. 501. The land devised, also, remained by the act of the testatrix charged in favor of her or her estate with a payment sufficient to meet the legacies. The charge made by the will was in effect continued by the deed, and the only real change is that the executor now is to sell or collect a note secured by a mortgage of the land, instead of selling the land itself.

The adopted daughters of the testatrix have the largest legacies under the clause in question. In determining whether they or the residuary legatees are to profit by the mortgage note, the reason of the rule that heirs are not to be cut off by doubtful implication supports their claim.

They are also given life interests in " the income from any and all loans secured by mortgage upon real estate." When the will was executed, and also at her death, the testatrix owned certain mortgage loans of this description. The daughters assert a right either to the income from the mortgage note of the trustees of the Riverview Heights Company, or if that be disposed of to pay legacies, then from whatever may be derived from any balance not required for that purpose, that may remain.

A loan, strictly speaking, whether secured or unsecured,

only exists when something has been lent to one who is under an obligation to return it. That may, in a secondary sense, be called a loan secured by mortgage, which is merely an indebtedness of the vendee for all or part of the price of property sold, secured by a mortgage back to the vendor. *Day* v. *Cohen*, 165 Mass. 304, 43 Northeastern Rep. 109. To describe by such terms a mortgage in favor of a vendor upon land sold, when there is no one personally indebted or liable for the sum secured, would be to employ them in a sense still more unreal and remote. When a word used in a will has a strict and primary meaning and also a secondary meaning, it is a sound rule of construction that it is to be given the former, unless the context indicates that the testator intended otherwise; if thus understood, the provisions of the will, as applied to his estate, would have an intelligible and sensible import. *Leake* v. *Watson*, 60 Conn. 498, 508. There is nothing in the other provisions of the will before us to qualify the primary meaning of the words employed in stating this legacy. On the contrary, it is plain that the testatrix did not contemplate leaving at her death mortgages on any of the Fort Pleasant Avenue lands. Part she had devised to a church, and the rest she had directed to be sold for a specific purpose, to effectuate which prompt payment in cash would be required.

Nor are the daughters entitled to the income from the railroad debenture certificates, under the bequest to them of the income of all the stocks of the testatrix, in any and all corporations. These certificates were not stocks. They were only convertible into stocks at a certain time subsequent to her decease, at the option of the holder; but if he did not so elect, they would remain what they originally were,—certificates of indebtedness for money borrowed. These legatees could not claim the interest which might be collected upon them before that time arrived, for it would not be income on stocks. They could not, after the time arrived, in case a conversion were made, claim the dividends on the stock received in exchange, for it would not be stock which ever belonged to the testatrix.

The legacy to the Baptist Church of Cromwell is payable only out of the proceeds of a sale of the Hartford house. Its position in clause 9, in immediate juxtaposition before and after with legacies only so payable, taken in connection with the use of the word " also " sufficiently indicate such to have been the intent of the testatrix.

The Superior Court is advised that (1) the legacies given by clause 7 are payable, and payable only, out of whatever may be collected on or received from the mortgage note secured on the Fort Pleasant Avenue land; (2) any balance remaining from such collection or receipts falls into the residuary estate; (3) the debenture certificates of the New York, New Haven and Hartford Railroad Company are also part of the residuary estate; and (4) the legacy to the Cromwell church is payable only from the avails of the Hartford house.

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.