### ESTATE OF FREDERICK TILLMANN, DECEASED.

[No. 5,816 (N. S.); decided November 10, 1909.]

**Legacy—When not Adeemed.**—A Bequest of eighteen shares of stock in a designated corporation is not adeemed where, between the date of the will and the death of the testator, a securities corporation is organized which is merely a holding company for the first corporation, owning all stock issued by it and no other property, and the testator exchanges his stock in the first corporation (twenty-one shares in all) for two thousand one hundred and twenty-one shares in the securities company.

Petition for partial distribution.

Morrison, Cope & Brobeck, for the petitioners.

COFFEY, J.   Testator made his will May 25, 1905.   In it he provided as follows:

"After my demise eighteen (18) of my shares of Tillmann & Bendel shall be distributed as follows:

"(1)   One share to each of my grandchildren, namely: Annie, Emilie and Nanny Schmelzkopf; Frederick Wilhelmine and Henry Hohwiesner; Frederick and Agnes Tillmann; Lieschen, Hans, Kurt, Erika, Rita and Heinz Ludwig Rohlwink.

"(2)   Four shares to my son Carl Heinrich, who although without issue, has a vocation in which he cannot acquire a fortune."

Tillmann & Bendel is a corporation with a capital stock of sixty (60) shares, of which fifty-six (56) shares are issued and outstanding.   At the time of the execution of his will the testator owned twenty-one shares of Tillmann & Bendel.

Between the date of the will and the death of the testator, the United Securities Company was incorporated under the laws of the state of Nevada, with an authorized capital of $1,500,000, of which $1,000,000 was in common stock, and $500,000 in preferred stock.

The United Securities Company is, up to this time, merely a holding company for Tillmann & Bendel.

The stockholders of Tillmann & Bendel exchanged their stock for stock in the United Securities Company.   Some took preferred stock and some took common stock.   The testator exchanged his stock for preferred stock of the United Securities Company, getting two thousand one hundred and twenty-one shares for his twenty-one shares in Tillmann & Bendel, or at the rate of one share of Tillmann & Bendel for one hundred and one shares of the United Securities Company.

The United Securities Company owns all of the issued stock of Tillmann & Bendel, but it owns no other property.

The par value of Tillmann & Bendel stock is $10,000 per share.   In the exchange it was estimated at $10,100, and the

preferred stock of the United Securities Company was taken at par.

Did this transaction work an ademption of the specific legacies? It did not do so, for the reason that the property dealt with has not changed in the least. The corpus of the material property dealt with was the property known as Tillmann & Bendel. The owners are exactly the same as they were before; their proportions are the same; only their title is evidenced by a different piece of paper. The property is the same, though called by a different name.

The decided cases seem to bear out this view: In re Peirce, 25 R. I. 34, 54 Atl. 588.

Testatrix bequeathed certain stock in a bank. Subsequently, but during her lifetime, the bank consolidated with other banks, the new concern taking over the liabilities and assets of the several banks without a formal liquidation, and their stockholders being entitled to exchange their shares for shares in the consolidated bank. Testatrix made the exchange, making a small additional payment in cash.

It was held that as the transfer was not a sale, but an exchange, the legacy of the stock was not adeemed.

Oakes v. Oakes, 9 Hare, 666: Testator by his will bequeathed as follows: "I give and bequeath all my Great Western railway shares, and all other the railway shares, which I shall be possessed at the time of my decease, unto my nephew, Arthur Oakes, for his own absolute use and benefit."

Afterward, before the death of testator, by a resolution of the company made under the authority of an act of parliament, the shares of the company were converted into consolidated stock. It was held that the legatee took the consolidated stock into which the shares were converted; although he did not take other consolidated stock which the testator bought afterward and which he held at the time of his death.

This case was overruled as to the matter of the additional stock in Morrice v. Aylmer, L. R. 10 Ch. App. 148, L. R. 7 H. L. 717.

The vice-chancellor in Oakes v. Oakes, 9 Hare, 666, held that "shares" and "stock" were different; but in Morrice v. Aylmer, they were held to mean practically the same thing, and therefore a bequest of shares would carry stock. But as

to the point involved in this present case, Oakes v. Oakes has never been overruled: In re Slater, Slater v. Slater (1907), 1 Ch. 665, affirming same case (1906), 2 Ch. 480; 8 Am. & Eng. Ann. Cases. 141.

A specific legacy of stock in a corporation was held adeemed where, after the execution of the will, the testator exchanged the stock for stock in another corporation which succeeded to the rights, duties and property of the first corporation. The succession (water companies) was made by virtue of an act of parliament. But the new company was not identical with the old company. It took in other properties and derived its revenues from additional sources, and, in fact, there was a sale of the old stock made upon a cash basis, and a purchase of the new.

The M. R., Cozens-Hardy, however, cited Oakes v. Oakes, 9 Hare, 666, with approval, where shares were converted into stock; and where Turner, V. C., said: "The testator had this property at the time he made his will, and it has since been changed in name or form only. The question is, whether the testator has at the time of his death the same thing existing, it may be, in a different shape—yet substantially the same thing": Prendergast v. Walsh, 58 N. J. Eq. 149, 42 Atl. 1049.

Testatrix gave to her three sisters "provided they are all alive, or to the survivors of them, whatever of my money now on deposit" in four banks of New York City (naming them) "which may be on hand, and not otherwise disposed of, share and share alike." During the life of the testatrix, she drew her money from the four New York banks. She told a friend that she intended to deposit the money in the Hoboken Bank, which she did; and it remained in the latter bank until her death.

The vice-chancellor held that this was a gift of a specific legacy, and that it was not adeemed.

"It is true that a general deposit in a bank creates a debt from the bank to the depositor. The bank is not bound to preserve the money in specie, and it can be paid by the delivery of any money of equal amount. It is also true that a testamentary gift of a debt due to the testator is adeemed, if the debt is paid to the testator during his life. But it seems to me that, while such a deposit creates a debt, yet the gift

of the amount of such a deposit, as money or cash, differs from the gift of an ordinary debt. It will pass by a gift of all the testator's ready money or cash. Sir Launcelet Shadwell in the case of Parker v. Marchant, 1 Younge & C. 290-307, affirmed by Lord Chancellor Lyndhurt on appeal (1 Phil. Ch. 356) said: "Undoubtedly an ordinary balance in the banker's hands is, in a sense, a debt due from him. Certainly he may be sued for the debt. But it may be equally true that, in a sense, it is ready money. . . . . The term 'debt,' however correct, is not colloquially or familiarly applied to the balance at a banking-house. No man talks of his banker being in debt to him. Men, speaking of such a subject, say that they have so much in their banker's hands, a mode of expression indicating virtual possession, rather than a right to which the law applies the term 'chose in action.' . . . .

"In the present case the intention of the testatrix was not to give a mere thing in action. What she gave was the money in the banks—using the words in their popular sense. . . . .

"The thing she bequeathed she drew from the bank. It remained the identical thing bequeathed, until disposed of in some way by her. She could have disposed of it by consuming it in living, or turning it into other property, or devoting it to a purpose inconsistent with the bequest. She did neither of these things, but, on the contrary, took the specific thing which she got from the bank, and kept it until April 1st, following, and then with a slight addition placed it in the Hoboken Bank": In re Pilkington's Trust, 13 L. T., N. S., 35.

Testator in his will dated September 25, 1860, made a bequest of "all his Lake Erie bonds and debentures" and other property to certain persons upon certain trusts, "according to the values and qualities thereof respectively." On October 5, 1861, he made a codicil, but did not in any manner refer to the above specific request. He died November 27, 1861. At date of will he had five $1,000 unsecured bonds of the "New York and Erie Railroad Company." This company becoming insolvent, a new company was formed, called the "Erie Railway Company." By the arrangement made on that occasion, the holders of the bonds of the "New York and Erie Railroad Company" became entitled, upon surrendering their un-

secured bonds, to shares in the preferred capital stock of the "Erie Railway Company" in request to those bonds.

The testator accordingly surrendered his said bonds, and received in exchange fifty-eight shares of the preferred capital stock of the "Erie Railway Company," and seventy-five dollars in the same stock. Of the fifty-eight shares and the seventy-five dollars the testator was at the time of his death possessed, for which he held two certificates of the company, dated New York, July 20, 1861; and he was not at the time of his death possessed or entitled of or to any bonds or debentures answering to the term "Lake Erie bonds and debentures," or to any debentures, bonds, stock or other securities in any railway in North America except the shares and stock above mentioned.

The contract by which the property of the "New York and Erie Railroad Company" was transferred to the "Erie Railway Company" was dated October 22, 1859. By that contract the bondholders of the former company agreed to exchange their bonds for preferred stock of the latter. It did not appear that the testator at the date of his will was aware of the negotiation and contract; but it was abundantly clear that he assented to it, because he paid to the "Erie Railway Company" on or before the twentieth day of July, 1861, his share amounting to $145 of an "assessment" or contribution of two and one-half per cent, upon the holders of unsecured bonds, assenting to the contract, for cash necessary to complete the purchase, as appeared by a receipt which was produced.

Vice-Chancellor Stuart held that the legacy was not adeemed. "No doubt there is this difficulty (and I wish it to be understood that I do not overlook it), that these bonds were for a specific sum defined by the language of the bonds themselves. By the quality impressed upon them at the time when the testator made his will, it was necessary for him to pay more money to acquire that other specific thing, which seems to me sufficiently to answer the description of the subject matter of the gift. But it seems to me that that cannot alter the construction to be put upon the will, for I think there is here a sufficient description of that specific thing into which it was the testator's wish these bonds, which he had specifically given, should be converted (though not by his own act), and

that he intended they should pass by the description in his will. The shares, therefore, must be declared to have passed by the description of the bonds and debentures.''

Ademption, in strictness, is predicable only of specific, and satisfaction of general, legacies: Beck v. McGillis, 9 Barb. 35, 56; Langdon v. Astor, 3 Duer, 477, 541.

Where the owner of land devises the same, together with the business and buildings thereon conducted, and thereafter organizes a corporation and leases the property to it, he being the principal stockholder in the corporation and continuing to manage the business as before, there is no change in the substance of the property, and on his death the devisees and legatees named in his will are entitled to a distribution of the property as therein specified: Estate of Garratt, 3 Cof. Pro. Dec. 394.

''Ademption is the technical term used to define the act by which a testator pays in his lifetime to his legatee a general legacy which, by his will, he had proposed to give him at death; or else the act by which a specific legacy has become inoperative, on account of the testator having parted with the subject'': Cozzens v. Jamison, 12 Mo. App. 452. See, also, Connecticut Trust etc. Co. v. Chase, 75 Conn. 683, 55 Atl. 171; Estate of Garratt, 3 Cof. Pro. Dec. 403, note.

The class of legacies thus far discussed are those known as general or pecuniary. We now come to another class, as to the ademption of which some conflict and confusion has arisen—specific legacies, which are, as the name implies, bequests of certain definite objects: Hood v. Hayden, 82 Va. 588.

One line of cases holds that the ademption of a specific legacy does not depend upon the intention of the testator, the sole test being, Does the thing bequeathed remain in specie at the time of the testator's death? If it does not, it is adeemed: Richards v. Humphreys, 15 Pick. (Mass.) 133; Beck v. McGillis, 9 Barb. (N. Y.) 35; Hoke v. Herman, 21 Pa. 301; Stanley v. Potter, 2 Cox, 180; Humphreys v. Humphreys, 2 Cox, 184. See note to Estate of Garratt, 3 Cof. Pro. Dec. 415, for a full discussion of this topic.

Application granted.

Ademption of Legacies is discussed in Estate of Garratt, 3 Cof. Pro. Dec. 394, and note.