# WILLIAM MILLER v. LENA KLOSSNER AND ANOTHER.[1]

## January 19, 1917.

## Nos. 20,069—(186).

**Will — legacies payable by son of testator.**

> Testator devised his real estate, consisting of three farms, to his three children, one farm to each. He bequeathed to each daughter a certain sum and provided that "said sums of money have to be paid by my son." The three children were also residuary legatees. During his lifetime testator conveyed to each child the farm devised to the same. *Held*:

> (1) The specific legacies were not revoked by the conveyances, since they were not made specific charges upon the land devised.

> (2) That the intention of the testator is clear that the specific legacies were not to be paid by the estate direct, but were to paid by the son and the court rightly deducted from his share as residuary legatee the sums bequeathed to the sisters and added the same to their respective shares.

From a final decree of the probate court for Nicollet county, Moll, J., assigning the residue of the estate of Ernest Miller, deceased, and particularly that part allowing legacies to Lena Klossner and Mary Kramer and refusing to allow the account of appellant as executor, William Miller appealed to the district court for that county. The appeal was heard by Olsen, J., who made findings and modified the final decree by finding that the residue of the estate for distribution to the legatees was the sum of $11,016.05, and apportioning that amount between the legatees named and William Miller. From an order denying his motion to amend the findings and conclusions of law or for a new trial, William Miller appealed. Affirmed.

*Thomas Hessian,* for appellant.

*Young & Quandt* and *Davis & Olsen,* for respondents.

[1] Reported in 160 N. W. 1025.

HOLT, J.

In 1895 Ernest Miller, a resident of Nicollet county, this state, made his will wherein he devised, subject to a life estate of his wife, a farm of 240 acres to his daughter Lena Klossner, a farm of 80 acres to his daughter Mary Kramer, and a farm of 200 acres and two fractional government lots to his son William Miller. The will then proceeds:

"I give, devise and bequeath to my daughter, Lena Klossner, one hundred eighty-three ($183.00) dollars, and to my daughter, Mary Kramer, eighteen hundred twenty-two ($1822.00) dollars, to have and to hold the same to the said Lena Klossner and Mary Kramer, their heirs and assigns, from and after the decease of my said wife, to them and their use and benefit forever. Said sums of money have to be paid by my son, Wm. Miller.

"All the rest and residue of my estate, real, personal and mixed, of which I shall die seized and possessed, or to which I shall be entitled at my decease, I give, devise and bequeath to be equally divided between and among my said children, Wm. Miller, Lena Klossner and Mary Kramer."

In 1907 he added a codicil making two alterations only. The 80-acre farm devised to the daughter Mary was to go to her three children, and this provision (somewhat bearing on the question for decision): "Second. And whereas in my said will I have given, devised and bequeathed unto my daughter, Mary Kramer, one thousand eight hundred twenty-two dollars ($1,822.00), I do hereby declare that my will is that I give, devise and bequeath to the said Mary Kramer, my daughter, eight hundred dollars ($800.00) to have and to hold the same to the said Mary Kramer, her heirs and assigns, from and after the decease of my said wife, to her and their use forever." The codicil expressly ratified all the provisions in the will, "except [wherein] the same is hereby revoked and altered as aforesaid." It will be noted that the condition that the son should pay the specific bequests to the daughters was left untouched. Some time after the codicil was made Mr. Miller conveyed the devised real estate to the persons designated in the will and codicil. His wife died before he did.

The probate and district courts held that it was the intention of testator to make the devise and bequests to the son, subject to the con-

dition that he pay the legacies to the daughters and entered decrees accordingly. The son on this appeal contends that, since the testator in his lifetime conveyed all the real estate devised, the bequests to the daughters were thereby revoked for they could be a charge only upon the real estate devised to him; and, if that be not so, then the legacies to the daughters should be paid out of the estate and the balance equally divided under the residuary clause of the will.

The conveyance of the only real estate upon which the bequests could be made a charge did not revoke or cancel the bequests in this instance. The conveyance was in the nature of an ademption of the devises of the real estate, revoking the same in the sense that there was no real estate, at the time of testator's death upon which the will could operate. The testator while living carried out the provisions of the will as to the realty. The will did not in terms make the daughter's legacies a charge upon the land devised to the son. Had such been the case the conveyance would necessarily have made their payment impossible. Connecticut Trust Co. v. Chase, 75 Conn. 683, 55 Atl. 171. No doubt Mr. Miller knew, when he deeded the real estate to the devisees, that he had more than enough of personal property so that these legacies could be paid out of the share to be received by the son in case he did not comply with the direction and paid it from his own funds. Had the real estate been conveyed to strangers, or otherwise than as devised, the conclusion might, perhaps, have been reached that the legacies were thereby intended to be revoked, but under the circumstances here presented the conveyance did not affect the specific legacies. Without price the son, apparently, got the largest and most valuable farm. It was nearest to St. Peter, a city of some size. The daughter whose children received the small farm was to have the largest legacy. No doubt Mr. Miller considered that the devises made, taken in connection with the bequests to the daughters, were such a distribution of his property as he deemed just and equitable, and when he made the conveyances accordingly he must have intended that the bequests should nevertheless stand, for by so doing no change was in reality made in the disposition already made by the will and codicil.

Although the will speaks only as to the disposition of the property of which a testator dies seized or possessed, it is proper to consider the situation at the time the will was made, the extent of his possessions and his

relation to the objects of his bounty, in order the more correctly to arrive at the true meaning of the language employed by him and thus carry out his intention. So doing, we entertain no doubt concerning Mr. Miller's intention with respect to the legacies to his daughters. We have already adverted to the situation of Mr. Miller's property at the date of the will and codicil, and to the fact that no change was made in the disposition of the real estate by the giving of the deeds, for it went to the persons designated in the will. His intention at the time of the execution of the will plainly was that the daughters' legacies should be paid by the son, on account, presumably, of the greater value of the devise to him. The son was also one of the residuary legatees. Devises and bequests are not infrequently made upon condition. Wallace's Exrs. v. Wallace, 15 W. Va. 722; Blackmore v. Blackmore, 187 Ill. 102, 58 N. E. 410. It matters little whether the devise and bequest to the son be considered conditional or not, we think the intention of the testator clear that the daughters were to receive the amounts specified from the son's share in the estate, if the son did not pay them out of his own property. The simple direction inserted in the will that the son should pay the bequests to the daughters undoubtedly appeared plain and adequate to the testator, though from a legal point of view the phrasing is somewhat crude and suggests legal complications. It however means the same as if there had been a provision that the property covered by the residuary clause, after first paying the funeral expenses, the expenses of administration and the debts therefrom, should be divided into three equal parts from one of which should be taken $983, and thereof $183 be added to one and $800 to the other of the two parts, and of the three parts so formed testator's daughter Mary Kramer was to have the largest, the daughter Lena Klossner the next largest, and the son the smallest. Personal property is the primary fund out of which legacies are to be paid, and it is only when such is lacking that devised real estate is looked to for payment. Hoyt v. Hoyt, 85 N. Y. 142. The law is well settled that, where real estate is devised to a person with direction that he pay a legacy or an amount of money to a third party, the devisee takes the land charged with the payment of the legacy, and also that by accepting the devise he assumes a personal liability to pay the same. Brown v. Knapp, 79 N. Y. 136. There would seem to be no good reason for not also holding that, when a

person is a residuary legatee of personal property, the same should stand charged with the sum or legacy which such person was by the will directed to pay to another legatee.

We think the estate was distributed in strict accordance with the will of Mr. Miller.

The order is affirmed.