## IN THE MATTER OF THE ESTATE OF OWEN J. EVANS.[1]

### March 19, 1920.

### Nos. 21,579, 21,626.

**Will — trust not revoked by subsequent lease for 100 years.**

1. The testator, after making his will whereby he devised the greater portion of his property in trust, made an enforceable contract to lease for 100 years a portion of the property devised in trust, with an option in the lessee to purchase within ten years. It is *held* that this contract did not revoke the will by implication of law, and that the trusts can be carried out in substantially the manner directed by the will.

**Election by widow when intent of testator not shown by will.**

2. The widow was not put to a statutory election by G. S. 1913, § 7239, which refers to the will of a parent, for the testator was not a parent, but, if the devise in trust was not intended to be additional to the statutory one-third, she was required to elect. Under the statute a gift to the wife is not treated as additional to the statutory right, unless it clearly

[1] Reported in 177 N. W. 126.

appears from the will that such was the testator's intent. It did not so appear, and the widow was put to an election.

**Statute applicable when devise to trustee for benefit of surviving spouse.**
3. The statute, G. S. 1913, § 7239, provides that "no devise or bequest to a surviving spouse shall be treated as adding to the right or interest secured to such survivor, by statute, unless it clearly appears from the contents of the will that such was the testator's intent." A devise to a trustee, for the benefit of the surviving spouse, out of which a substantial income was to be paid, not intended by the testator to be additional to the statutory right, puts the spouse to an election as if the devise had been direct.

Tamazine M. Evans appealed to the district court from the decree of distribution of the probate court for Hennepin county, Dahl, J., assigning to her an undivided one-third of the real estate belonging to the estate of her husband, Owen J. Evans, and to the Minneapolis Trust Company, in trust for the uses and purposes set forth in his will, an undivided two-thirds thereof. The appeal was heard by Fish, J., who made findings that the making of the contract mentioned in the opinion did not revoke the will; that the gift of $200 per month during her life was additional to her statutory one-third; that the $200 per month was a charge upon the remaining two-thirds, and that she was not put to an election between her statutory interest and the monthly payment, and remanded the case to the probate court with directions to modify its decree so as to direct the monthly payment to be made by the trustee to the widow. From the order denying the motion of appellant for amended conclusions of law or for a new trial, Tamazine M. Evans appealed. Affirmed in part; reversed in part.

*Francis B. Hart,* for appellant.

*Lancaster & Simpson* and *L. F. Lammers,* for respondents.

DIBELL, J.

By his will Dr. Owen J. Evans of Minneapolis, after making a number of unimportant bequests, devised all of his property to the Minneapolis Trust Company, in trust, to pay from the rents and profits $200 per month to his wife during her life, and upon her death, with unimportant exceptions, the property remaining was to be sold and the pro-

ceeds distributed among his collateral blood. relatives. After making his will he made a contract for a lease of certain property in Minneapolis, which was the principal portion of the property devised in trust, for 100 years, and in this contract, which was binding upon both parties, gave the lessee the option to purchase at any time within 10 years at a stated price. The probate court held that the making of this contract did not revoke the will, that the gift of $200 per month to Mrs. Evans was not additional to her statutory right, and that she was put to an election. On her appeal to the district court it was held that the making of the contract did not revoke the will, that the gift of $200 per month during her life was additional to her statutory one-third and that she was not put to an election, and that the gift of $200 per month was a charge upon the remaining two-thirds. Mrs. Evans appeals from the decree and the residuary devisees appeal. The arguments of counsel group themselves about these three questions:

(1) Whether the contract for a lease with the option to the lessee to purchase revoked the will by implication of law.

(2) If it did not, whether Mrs. Evans was put to an election, and this depends upon whether the gift of $200 per month was additional to the statutory one-third given her by statute. ·

(3) Involved in the preceding question is the question whether the statute, G. S. 1913, § 7239, which provides that a devise to the wife shall not be deemed additional to her statutory interest, unless it clearly appears from the will that such was the intent of the testator, applies when the devise is to a trustee for the wife's benefit and not directly to her.

1. Dr. Evans died on October 17, 1916. His will was dated November 11, 1914. He then owned a property in Minneapolis known as the Anglesey building, subject to a mortgage of $36,500. This property was worth something like $100,000 and was the principal part in value of his estate. He owned a quarter section in Cass county and some lands in other states, found by the court to be altogether of the value of $14,000. The value of his personal estate was small. He bequeathed to various of his relatives articles of personal property of no considerable value and not in controversy here. He devised the residue of his property to the Minneapolis Trust Company in trust. It was directed to sell the property devised, except the Anglesey, and apply the proceeds in reduction of

the $36,500 mortgage; to lease the Anglesey, and after the payment of insurance, taxes and interest, to pay $200 per month to Mrs. Evans during life, and apply the rest in reduction of the encumbrance, and after the payment of the encumbrance to invest and reinvest and hold as a part of the trust fund. Upon the death of Mrs. Evans the Anglesey was to be sold and the proceeds divided among the testator's nephews and nieces and grandnephews and grandnieces. We omit mention of some of the provisions of the will not material here and refer to them in the connection in which they are important.

On September 16, 1916, Dr. Evans made a contract with the Benjamin A. Paust Company, whereby he agreed to lease the Anglesey for 100 years at an annual rental of $6,600, the lessee to pay taxes, insurance and repairs. The lessee was to erect an additional building on the property to cost not less than $4,000 within three years, and to further improve the property within ten years at an additional cost of not less than $8,000. The option was given the lessee to purchase within ten years for $110,000. If the purchase was made, enough cash was to be paid to discharge the $36,500 mortgage, and the balance was to be secured by a six per cent mortgage running for 25 years, with the option to pay at any time after the death of Dr. Evans and his wife.

After the death of Dr. Evans his executor executed a lease in conformity with the contract, in which Mrs. Evans joined, and it was approved by the probate court.

The claim of Mrs. Evans in this court, as in the court below, is that the making of this contract revoked the will and that she took the whole estate as sole heir. The probate court, and the district court on appeal, found against her.

It was the common-law doctrine that land unless owned by the testator at the time of his will and continuously owned by him thereafter until his death did not pass by a devise of it. "The law requires that the same interest which the testator had when he made the will should continue to be the same interest, and remain unaltered to his death. The least alteration in that interest is a revocation." 4 Kent, Com. 529. By consequence a conveyance of the land devised operated as a revocation of the will. It was said in such a case that there was a revocation by implication of law because of the alteration of the estate. The strict rule that

the least alteration in the estate of the testator revoked the will, founded in part on the common-law conception of seisin on which English real property law was bottomed, and the necessity of livery to a conveyance, led to bewildering refinements and confusing distinctions often bringing absurd and harsh results of which the English judges complained, but the rule persisted. 1 Jarman, Wills, 161; Page, Wills, §§ 278, 279; 1 Redfield, Wills, 331-342; 1 Woerner, Adm. 103; 1 Schouler, Wills, § 427; 4 Kent, Com. 528; Gardner, Wills, 246; Rood, Wills, § 366, et seq.; 30 Am. & Eng. Enc. (2d ed.) 652; 40 Cyc. 1205; 27 Ann. Cas. 1913B, 56; Lang v. Vaughn, 137 Ga. 671, 74 S. E. 270, 40 L.R.A. (N.S.) 553, Ann. Cas. 1913B, 56; American T. & B. Co. v. Balfour, 138 Tenn. 385, 198 S. W. 70, L.R.A. (N.S.) 1918D, 538.

By statute, 1 Vict. c. 26 (1837), the doctrine of implied revocation was abolished. Section 19 provided "that no will shall be revoked by any presumption of an intention on the ground of an alteration in circumstances." Section 23 provided that no conveyance made after the execution of a will should prevent its operation with respect of the estate or interest the testator should have power to dispose of by will at the time of his death. Section 24 provided that every will should be construed with reference to the property mentioned in it to speak and take effect as if executed immediately prior to the testator's death, unless a contrary intention appeared. Some of the states have statutes similar to those mentioned. Some others, as may be noted from the authorities cited above, reach much the same result without the aid of a specific statute.

We have no statute following section 19 or section 23 of the English statute. We have a statute which provides that every devise of land shall convey all the estate of the testator, unless it appears by the will that he intended a lesser estate. G. S. 1913, § 7263. This statute is easily referable to the quality of the estate transferred, so that, for instance, a fee may pass, though heirs or assigns or others than the devisee are not mentioned, and so to refer to the construction of the will rather than to bear on the question of implied revocation. See In re Oertle, 34 Minn. 173, 178, 24 N. W. 924; Gleason v. Fayerweather, 4 Gray, 348; Burlingham v. Belding, 21 Wend. 463. But in Estate of Lefebvre, 100 Wis. 192, 75 N. W. 971, such a statute was considered to bear on implied revocation.

Another statute, resembling section 24, provides that property acquired by the testator after the making of his will shall pass as if possessed by him when he made it, unless a different intention manifestly and clearly appears from the will. G. S. 1913, § 7264. This statute is not in harmony with the theory upon which the common-law revocation by alteration of estate was based.

The statute which defines the different methods of express revocation provides that "nothing in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator." G. S. 1913, § 7256. This has been construed to adopt the common-law doctrine of implied revocation whether by change of status or by alteration of estate. Graham v. Burch, 47 Minn. 171, 49 N. W. 697, 28 Am. St. 339; Hulett v. Carey, 66 Minn. 327, 69 N. W. 31, 34 L.R.A.(N.S.) 384, 61 Am. St. 419; Donaldson v. Hall, 106 Minn. 502, 119 N. W. 219, 20 L.R.A.(N.S.) 1073, 130 Am. St. 621, 16 Ann. Cas. 541. In the latter case it is said that "the tendency of the reported cases has been to restrict, rather than enlarge, its scope."

The rule is general that a conveyance of property devised revokes the will wholly or pro tanto in the sense that the will cannot operate upon property conveyed after its execution. This is but the statement of a truism.

There is ample authority for holding under the common-law rule that a contract for the conveyance of real property, whereby the vendee takes the equitable title, and the vendor retains the legal title as security for the unpaid purchase money, operates as an implied revocation. Bennett v. Tankerville, 19 Ves. 170; Gale v. Gale, 21 Beav. 349; Walton v. Walton, 7 Johns. Ch. 258, 11 Am. Dec. 456; Donohoo v. Lea, 1 Swan (Tenn.) 119, 55 Am. Dec. 725; In re Bernhard, 134 Iowa, 603, 112 N. W. 86, 12 L.R.A.(N.S.) 1029. It does not seem that a mere lease necessarily had such effect. Hodgkinson v. Wood, 4 Cro. Car. 23; Lamb v. Parker, 2 Vern. 495; Brady v. Brady, 78 Md. 461, 28 Atl. 515.

Counsel relies upon Bosley v. Bosley's Ex'x, 14 How. 390, 14 L. ed. 468, as holding that a lease coupled with an option in the lessee to purchase is a revocation. There the testator and his lessee agreed upon a purchase price and a portion was paid in cash. A lease was given for 99 years renewable forever at a ground rent equivalent to interest on the

unpaid price, and with the right in the lessee to extinguish it by the payment of the unpaid portion of the purchase price. This was said to be a common form of contract in Maryland, from which the case comes, and nearly to have superseded the old form of contract for a conveyance or a bond for deed. The lease and option were held the equivalent of a contract of sale and therefore to effect a revocation. We do not minimize the force of the argument based on this case nor the force of the decision in Newport Water Works v. Sisson, 18 R. I. 411, 28 Atl. 336, which is cited in connection with it.

The lease and option given by Dr. Evans did not take his legal title. The lessee acquired a chattel real, the lease, and an option to purchase the reversion for which there was a consideration, but it took no equitable estate in fee as in the case of a contract of sale. There was no conversion of real property into personalty. The other real property, which was a part of the trust, and found to be worth $14,000, and which was to be used in protecting the Anglesey, was not disturbed. The trust can be carried out in substance as the will directs. All the purposes which Dr. Evans had in view and all the provision he chose to make for Mrs. Evans, and all the benefits which he wished to give his collateral blood relatives, can be given effect. See Forney's Estate, 161 Pa. St. 209, 28 Atl. 1086; Conn. Trust & Safe Dep. Co. v. Chase, 75 Conn. 683, 55 Atl. 171. Under the circumstances recited the law should not imply a revocation. That Dr. Evans, when he gave the lease and option, had in mind revoking his will or changing the provisions of the trust, is not to be thought. The law should not give that effect through the doctrine of implied revocation. By considering the land as passing in trust subject to the benefits and burdens which attach because of the lease and the option, the will is easily given the substantial effect which Dr. Evans wished.

It may be noted that some cases refuse to apply the doctrine of an implied revocation by a subsequent contract of sale when thereby the apparent intention of the testator is thwarted. Stender v. Stender, 181 Mich. 648, 148 N. W. 255; Kirscher v. Todd, 195 Mich. 297, 162 N. W. 129; Estate of Lefebvre, 100 Wis. 192, 75 N. W. 971. And so in case of a deed subsequent to the will. Bills v. Putnam, 64 N. H. 554, 15 Atl. 138; Forney's Estate, 161 Pa. St. 209, 28 Atl. 1086; Conn. Trust & Safe

Dep. Co. v. Chase, 75 Conn. 683, 55 Atl. 171. And see Miller v. Klossner, 135 Minn. 377, 160 N. W. 1025. We do not discuss these cases nor need we decide what the holding should be if there had been a contract of sale vesting the equitable title. We limit our decision to a holding that the execution of the lease containing the option of purchase did not revoke the will nor prevent the carrying out of its trusts.

2. Failing in her claim that the will was revoked by implication of law Mrs. Evans contends that the trust devise is additional to her statutory one-third; that she is not put to an election between the will and the provision of the statute; and that she takes her statutory one-third with the $2,400 annuity charged on the remaining two-thirds. The district court held with her.

Mrs. Evans is not put to an election within six months, by G. S. 1913, § 7239, which refers to a case where "the will of a deceased parent makes provision for a surviving spouse in lieu of the rights in his estate secured by statute," for Dr. Evans was not a parent. Radl v. Radl, 72 Minn. 81, 75 N. W. 111; Tracy v. Tracy, 79 Minn. 267, 82 N. W. 635; Mechling v. McAllister, 135 Minn. 357, 160 N. W. 1016, L.R.A. 1917C, 504. But unless that given by the will was intended as additional to that given by statute she must elect. In re Gotzian's Estate, 34 Minn. 159, 24 N. W. 920, 57 Am. Rep. 43.

The early statute was that, when any lands were devised to a woman or other provision made for her in the will of her husband, she must make her election whether she would take the lands devised or the provisions made in the will, but she could not have both, unless it plainly appeared by the will to have been so intended by the testator. G. S. 1866, c. 48, § 18. This provision was repealed by Laws 1875, p. 74, c. 40, which abolished dower and provided an estate of inheritance in lieu thereof. This left applicable the common-law rule which was that the widow was entitled to both dower and the provision made in the will, unless it plainly appeared from the will not to have been so intended. In re Gotzian's Estate, 34 Minn. 159, 24 N. W. 920, 57 Am. Rep. 43; McGowan v. Baldwin, 46 Minn. 477, 49 N. W. 251. It so continued until Laws 1893, p. 226, c. 116, § 5, when there was added a provision, now appearing in G. S. 1913, § 7239, in the following language: "And no devise or bequest to a surviving spouse shall be treated as adding to the

right or interest secured to such survivor by statute, unless it clearly appears from the contents of the will that such was the testator's intent."

It does not appear from the contents of the will that the trust devise was intended to be additional to the statutory one-third. The contrary appears. The trust devise included all of the testator's property except some minor articles of personal property, largely personal belongings of no great value, bequeathed to relatives apparently more as keepsakes than because of their value. He intended his wife to have $200 per month during her life and had in mind that the Anglesey was the property which would secure it. To this end he put all of his property in trust with directions that all except the Anglesey, which was revenue-producing, should be sold, and the proceeds used to protect it against the mortgage, and that the Anglesey should be charged with the payment of the income. He provided for burial for himself and his wife and for the care of their cemetery lot. If his wife chose to give by her will $200 per year to her sisters for life each of them was to have it, and the trust fund was to be preserved to insure its payment. There was then a bequest of $1,000 to a church fund, and the residue was to be distributed among his collateral blood relatives. It was not in his mind that his wife should have one-third of all his estate and that the remaining two-thirds should be charged with the $2,400 annuity. The conclusion is irresistible that Dr. Evans intended his wife to have the specified income for life and the further provisions mentioned and nothing more, and that when his estate had satisfied this charge the residue should go to his collateral blood relatives. This was his will.

We hold that Mrs. Evans was not entitled to the annuity in addition to a statutory one-third and that she was put to an election.

3. The statute quoted refers to a "devise or bequest to a surviving spouse." G. S. 1913, § 7239. It is the contention of Mrs. Evans that since the devise was to the Minneapolis Trust Company, as trustee, and not directly to her, she is not within the provision of the statute that a devise shall not be deemed additional to the statutory interest, unless it clearly appears that such was the testator's intention. In Van Arsdale v. Van Arsdale, 26 N. J. Law, 404, one or more of the judges held to that effect, though the decision was rested upon another ground. At common law to bar the wife's right of dower by a jointure the settlement must

have been to the wife herself and not to another in trust for her. 4 Kent, Com. 5; 2 Blackstone, 137-139; 1 Washburn, Real Prop. § 490; Tiedeman, Real Prop. § 117; 1 Tiffany, Real Prop. 459; 2 Scribner, Dower, 391, 399. The effect of the statute of uses, 27 Henry VIII, c. 10, which transferred the use into a legal estate, was to make the wife dowable in estates of her husband executed by the statute, though before she was not dowable in estates held in trust for him. So the statute provided that when a jointure was made the wife should not claim dower in other of her husband's lands. The statute, as it was construed, only had in mind such jointures as were settled upon the wife and by force of the statute barred dower, and a grant to a trustee for her was therefore not a legal jointure so as to bar her dower. It was upon this notion of a common-law jointure barring dower that the holding noted in the New Jersey case rests. We are far from common-law dower. There is nothing in the history or reason of the technical common-law rule, though it was entirely reasonable when applied to dower as it then was, which prompts us to apply it to the statute which determines when a devise shall be in addition to the statutory interest. Our statute gives dower in equitable estates.

Until dower was abolished in 1875 the statute referred to a case where lands were "devised to a woman, or other provisions made for her in the will of her husband," and in such a case she was required to elect. G. S. 1866, c. 48, § 18. From 1875 to 1893, when the present provision was adopted, there was nothing in the statute raising a presumption that a devise to the wife was or was not additional to the statutory right. When the legislature put the statute in its present form, dropping the words, "or other provisions made for her in the will of her husband," it was not its intention to make a rule in harmony with the rule when jointures barred dower, and so to make a provision for the wife ineffectual to put her to an election unless there was a devise directly to her. The devise to the trust company gave the wife an equitable right or estate. She was a beneficiary of the trust. We hold that it was as effectual to put her to an election as if there had been a devise directly to her.

Upon the appeal of Mrs. Evans the judgment is affirmed and on the appeal of the residuary devisees it is reversed, and the case is remanded for proceedings not inconsistent with this opinion.

Judgment affirmed in part and reversed in part.