IN RE ESTATE OF HANS E. PAULSON.
PAULINE PAULSON v. CHARLES A. SWENSON AND OTHERS.[1]

July 12, 1940.

No. 32,509.

---

[1]Reported in 293 N. W. 607.

*George L. Bargen,* for appellant.
*Charles A. Swenson,* for respondents.

STONE, JUSTICE.

Appeal from a judgment of the district court affirming the final decree of distribution and the order of the probate court settling the final account of representative.

Mr. Paulson died testate, leaving all his personal property to appellant, his widow. He also devised to her a life estate in his farm which was not a homestead. The remainder was devised to his seven children by a former marriage. They are respondents. The other respondent, Mr. Swenson, was appointed administrator *c. t. a.* No election not to be bound by the will was made by appellant. August 15, 1935, the probate court made an order limiting to six months the time for filing claims. In September, 1936, the Atwater State Bank presented two claims, totaling $190.62. Without opposition from the administrator, these claims were allowed September 28, 1936. They were later paid.

October 15, 1937, the representative was granted license to sell the farm, the personalty being insufficient to pay debts and expenses. It sold for $5,300, of which $1,800 was absorbed by a mortgage debt. The rest was commingled with earlier income from the farm. There was no attempt to segregate or separately account. There remains for distribution $2,251.19, which is less than the value of appellant's life estate therein when the farm was sold. By the final decree, appellant was assigned a life estate in the residue, as proceeds of the farm, and respondents (other than Mr. Swenson) got the remainder.

■ First for attention is a point concerning the amount of compensation due Mr. Swenson for his services as admin-

istrator and attorney for the estate. The issue was not decided below. The only thing said in the findings concerning it is that "there is not sufficient evidence * * * [on this question] upon which an opinion or finding can be based."

On appeal from the probate to the district court, the statute (§ 169), requires trial *de novo*. The burden is upon the administrator or executor or attorney to establish the reasonable value of his services. If he comes forward with no evidence, decision must go against him. So it is enough to say on this point that there must be a new trial of this issue.

■ The orders allowing the claims of the Atwater bank were judgments, and the time for appeal has long since expired. The present attack on them must fail unless there was no jurisdiction to make the orders.

The extent to which the jurisdiction of the probate court is subject to limitation by the legislature is dealt with generally in In re Estate of Borlaug, 201 Minn. 407, 276 N. W. 732. The procedure for the filing of claims and their allowance is a creature of statute. By § 101, all claims arising upon contract "shall be * * * filed in court within the time limited." By § 100, that time is limited to four months[2] from the date of the filing of the order for hearing on claims. Contingent claims which do not become absolute or capable of liquidation within the time limited shall not be filed. If they become absolute or liquidated after expiration of the time limited but before settlement and allowance of the final account, they may be filed and heard on notice, notwithstanding the provisions of § 107.

---

[2]Formerly the time was six months, as fixed by the order in this case which was made August 15, 1935. The new probate code had gone into effect July 1. That fact and its resulting changes did not come to the attention of the probate court and the administrator until later. Our citations of the code sections refer to L. 1935, c. 72. It is compiled as 3 Mason Minn. St. 1940 Supp. § 8992-1, *et seq.* c. 74.

By § 107 it is declared that no action shall lie against a representative upon any claim required to be filed. That section proceeds to say that except as to contingent claims, "no claim against a decedent shall be a charge upon his estate unless filed in the probate court within * * * the time limited under Section 100 or extended under Section 101" (four months from date of the order for hearing on claims, or, if notice is given and cause shown before final settlement and allowance of the representative's account and "within one year after the date of the filing of the order").

We hold that the orders allowing the claims of the Atwater State Bank were void for want of jurisdiction. They were not contingent claims and were not filed for more than one year after the filing of the order for hearing on claims. State ex rel. Scherber v. Probate Court, 145 Minn. 344, 177 N. W. 354, 11 A. L. R. 242; Ebert v. Whitney, 170 Minn. 102, 212 N. W. 29, 51 A. L. R. 771; In re Estate of Borlaug, 201 Minn. 407, 276 N. W. 732.

In short, our statute is one of "nonclaim" denying to the probate court power to allow claims after the time stated. "Nonclaim statutes are jurisdictional, and unless complied with the court cannot allow the claim." 21 Am. Jur., Executors and Administrators, § 368. See also 24 C. J. p. 317. It probably does not affect claims in favor of government, state or national. United States v. Summerlin, 310 U. S. 414, 60 S. Ct. 1019, 84 L. ed. 1283 (opinion filed May 27, 1940). By so much as what was said in O'Brien v. Larson, 71 Minn. 371, 74 N. W. 148, diverges from this decision, we deem it an incorrect expression of our law. The account of the administrator should be surcharged by the amount paid on the claims of the Atwater bank.

■ We come now to appellant's challenge of the disposition of cash residue made by the final decree. Objection thereto is upon the ground that appellant's life estate should have been preferred to the remainder and the latter first used for payment of debts and expenses of administration.

The final decree, giving appellant a life estate in the proceeds of sale of both life estate and remainder, after payment therefrom of debts and expenses, in effect puts the two devises on the same footing and makes them abate ratably.

By § 29(1) of the probate code, one-third of both realty and personalty descends to the surviving spouse, subject to taxes, debts, and expense of administration, but free of testamentary disposition to which such survivor shall not have consented "in writing or by election to take under the will." Section 47 declares that "if a will make provision for a surviving spouse in lieu of the rights in the estate secured by statute, such spouse shall be deemed to have elected to take under the will, unless he shall have filed an instrument in writing renouncing and refusing to accept the provisions of such will within six months after the filing of the certificate of probate. * * * No devise or bequest to a surviving spouse shall be considered as adding to the rights in the estate secured by * * * Sections 27 [the homestead section] and 29 to such spouse, unless it clearly appears from the contents of the will that such was the testator's intent."

Because no other intent was here expressed, the devise to appellant is considered to be in lieu of her statutory interest. Section 47; In re Estate of Evans, 145 Minn. 252, 177 N. W. 126, 8 A. L. R. 1631. No renunciation of the will having been made by her, appellant is "deemed to have elected to take under the will." She takes her devise "as purchaser, for which she pays a consideration by surrendering her claim" to her share by descent. (The latter is our statutory substitute for dower.) 6 Dunnell, Minn. Dig. (2 ed. & 1934 Supp.) § 10285a; In re Estate of Gotzian, 34 Minn. 159, 167, 24 N. W. 920, 57 Am. R. 43.

By taking under the will, thereby foregoing her right to elect otherwise, appellant has put in the category of legacies founded on consideration the devise of the life estate to her. The gift of the remainder remains mere bounty. So the case is within the "established rule that where a testamentary

gift is founded upon some valuable consideration, it is, in case of a deficiency of assets, entitled to preference in payment over other legacies of the same class which are mere bounties, upon the ground that in such case the legatee stands in the situation of a purchaser, and not a mere volunteer." 28 R. C. L. p. 303.

In such cases courts have long shown strong inclination to prefer the provision for a widow to all others. Here has been argument for appellant that the devise of life estate to the widow should be considered a specific legacy and that of the remainder a residuary gift. That theory, which we neither reject nor adopt, would lead to the conclusion that the residuary gift should abate first.

Many decisions are probably best explained by this summary statement.

"Fundamentally the question is one of the probable desires of the average testator and it seems reasonable to hold that, nothing else appearing, the testator should be deemed to have intended this plan of abatement." Atkinson, Wills, p. 713.

That theory also we need not appraise. Enough for this case is its established proposition of fact and law that appellant as widow is claiming preference for her life estate because she has given value for it and so enjoys the status of purchaser of the benefit rather than that of recipient of bounty. So the life estate devised to appellant must be preferred to the remainder devised to the children. Atkinson, Wills, p. 710.

It would be proper, we assume, either to sell the remainder, leaving undisturbed the life estate (as was done in Baldwin v. Zien, 117 Minn. 178, 134 N. W. 498), or to sell the whole estate, as was done here, giving the widow the present value of the life estate and preferring it to that part of the proceeds allocable to the remainder interest. Circumstances will ordinarily indicate which process is preferable.

This sale was made without objection, and the question now is as to distribution of the proceeds. We hold that appellant's life estate is, as to debts and expenses, preferred to the remainder, and that the latter must first be used in their payment. The present value of the life estate exceeds the sum now in the administrator's hands for distribution. The widow is therefore entitled to the whole fund.

For respondents it is argued that § 146 requires the result reached below. That section authorizes sale of a decedent's realty to pay debts and expenses of administration when the personalty is insufficient or when a sale is for the best interests of the estate. It continues, in language stressed by respondents:

"The proceeds of any such sale * * * which may be available for distribution shall be distributed to the same persons and in the same shares as if it had remained real estate."

That, we think, requires the result we reach. Had life estate and remainder been sold separately, each would have been converted into personalty. But the former appendages of ownership and liability would have remained. The proceeds of the remainder would have been first liable for debts and expenses. Not until they were exhausted would resort properly have been made to the proceeds of life estate.

Where, as here, the land itself, the whole estate, is sold, the proceeds must first be divided between life tenant and remaindermen. Then the share of the former is not to be touched for debts or expense of administration until the share of the latter is absorbed. Then, and then only, may resort be had to the proceeds of the life estate of the widow. Such procedure is a literal application of the plan and accomplishes the purpose of the statute. § 146.

Our disposition of the case will result in assigning to appellant the entire residue. Therefore we need not con-

sider whether on other grounds (as statutory allowance or income from the farm) she should get some part of it.

The judgment must be reversed. There will be a new trial of the issue as to Mr. Swenson's compensation as administrator and attorney for the estate. The case will be determined otherwise in harmony with this decision.

So ordered.