## LANG *v.* VAUGHN *et al.*

Where a testator conveys to another specific property devised or bequeathed, and does not afterward become possessed of the same, and the will contains no provision for such contingency, the devise or legacy is adeemed, and such legal result can not be obviated by extrinsic evidence tending to show that the testator did not intend it.
FEBRUARY 28, 1912.

Interpleader. Before Judge Charlton. Chatham superior court. February 3, 1911.

Miss Mary Tupper executed her will in September, 1905. She

was then in possession of a certain improved lot in the city of Savannah. She owned in her own right an undivided half interest in the lot and improvements, and held the other undivided half interest as executrix under the will of her sister, Cornelia T. Lang, the mother of Mary T. Lang. The will of Cornelia T. Lang was executed in 1884, and in the second item thereof the undivided half interest belonging to Cornelia T. was devised to her daughter, Mary T. Lang, such devisee to hold and enjoy all of the profits as long as she might remain unmarried, with the provision that upon her marriage this undivided half interest belonging to Cornelia T. should be divided equally between her four children, including Mary T., and that in the event Mary T. should never marry, she should have the power to dispose, by deed or will, of one undivided fourth of this half interest, receiving, however, the rents and profits from the interest so long as she remained single. By the eleventh item of the will of Mary Tupper she devised to Mary T. Lang " all my interest, to wit, an undivided one-half interest, in that lot on Bay street, Savannah, Georgia, known as lot No. 4 Jekyl Tything, Derby Ward," this being the same lot and the improvements in which Miss Tupper owned an undivided half interest, the other undivided half interest belonging to the estate of her sister, Cornelia T. Lang, and of this Miss Tupper had possession individually and as executrix of Cornelia T. By the twelfth item of her will Miss Tupper made Mary T. Lang, Helen T. Vaughn, Clara B. Vaughn, Isabelle V. Smith, and Cornelia C. Vaughn her residuary legatees. On May 8, 1906, Miss Tupper, individually and as executrix of the will of her sister, Cornelia T. Lang, and by virtue of a power of sale in the will of Cornelia T., sold the western half of this lot to the Hibernia Bank for $5,000. On the twelfth day of the same month she invested $2,400 of the 'proceeds of such sale in stock of the Georgia State Building and Loan Association, and took a certificate for it, No. 1428, in her individual name, and at the same time invested a like amount of such proceeds in stock of the same association and took a certificate, No. 1429, in her name as executrix of the will of Cornelia T. Lang. The balance of the proceeds of the sale she put in " the five per cent. stock of said loan association," and took two pass-books of deposits for the same, one of the books in the name of herself individually for half of such balance, and the other in her name as executrix of the will of Cor-

nelia T. Lang for the other half of the balance of the proceeds of the sale. Miss Tupper died June 12, 1910, not having withdrawn either of such deposits and having made no change in her will. Under a bill for interpleader, filed by the executor of the will of Miss Tupper, the question was presented whether the sale and conveyance by Miss Tupper to the bank of her undivided half interest in the city lot and the improvements thereon, she not afterwards becoming possessed of the same, and the investment by her of the half interest she owned individually in the proceeds of the sale in corporate stock, was an ademption of the devise of her interest in such property to Mary T. Lang. The residuary legatees under the will of Miss Tupper contended that the specific devise to Mary T. was adeemed pro tanto by the sale and reinvestment, and that therefore the corporate stock purchased by Miss Tupper with the proceeds of the sale, belonging to her individually, the certificate for which was issued in her name individually, went to them under the residuary clause of her will. The contention of Mary T. Lang was that the specific devise to her was not adeemed. By consent the case was tried by Judge Walter G. Charlton without a jury. Evidence was submitted on behalf of Miss Lang, to the effect that Miss Tupper, in January, 1905, consulted her counsel as to the advisability of selling the city lot and reinvestment of the proceeds of the sale. She was advised, as the buildings on it were in a dilapidated condition and practicably untenantable and bringing in little or no income, that it would be best to sell and reinvest the proceeds in stock of the Georgia State Building and Loan Association; and her counsel soon thereafter, at her instance, wrote a letter to Mary T. Lang, informing her that Miss Tupper was of the opinion that it was best to sell the property in question and to reinvest the proceeds in other property. After the sale the same counsel advised Miss Tupper to invest the proceeds of the sale as she did invest it. It was shown that Mary T. Lang was the niece of Miss Tupper, and that the residuary legatees were close friends of hers, with whom she lived for a number of years prior to her death, and with whom she was living when she died. Other facts appearing upon the trial are set forth in the opinion rendered by Judge Charlton, as follows:

"This proceeding, which is substantially a bill of interpleader, is brought by the executor of the will of Mary Tupper to deter-

mine whether a designated sum of money and certain shares of
stock shall go under the eleventh item of the will as a specific
legacy or under the twelfth item be turned over to the residuary
legatees.   The property specifically devised in the eleventh item
was sold by the testatrix subsequent to the making of the will.   She
and her deceased sister had owned the property in common, and
she was the executrix of her sister's will.   She sold the property in
both capacities, took the purchase-money check, and, without cashing
it, indorsed it over to the Georgia State Loan Association, in pay-
ment of stock in that concern, the balance after payment for such be-
ing deposited to her credit on the books of the company.   The de-
visee under the eleventh item is a niece of the testatrix; not in good
health, and living west.   The residuary legatees are the children of
an adopted-daughter of the testatrix, with whom the latter lived un-
til the adopted daughter died, since which event she continued to
live with the residuary legatees.   During the lifetime of the daugh-
ter she paid nominal board; since her death she paid none.   In her
will all of the interpleaders are remembered.   The interesting con-
tention arising is, whether or not the sale of the interests in the real-
ty to have passed under the eleventh item adeemed the devise.   The
residuary legatees urge that the common law prevails in Georgia,
and that the language of the Code (§§ 3332, 3333) is to be con-
strued with reference to it.   The specific devisee claims that in Geor-
gia the rule of intention as taken from the civil law prevails, and the
devise has not been adeemed but merely transferred or substituted,
and the fair and conclusive deduction is that the intention of the
testatrix was not to adeem the devise, but by practically segregating
the purchase-money, investing the major portion, and even preserv-
ing the fractional residue in bank, to preserve the devise in sub-
stance.   This, it is urged, is also shown by the fact that, having
been tenant in common of the realty with the mother of the specific
devisee, the testatrix, as executrix, invested the proceeds belonging
to that estate in identically the same manner.   We may eliminate
from the discussion the relations between the testatrix and the
contending parties.   She was apparently on affectionate terms with
all of them.   In doing this, it seems to me that the question of in-
tention is also practically eliminated.   The suggestion is strong
that the course pursued by the testatrix in immediately investing
the proceeds and depositing the fractional sum would indicate an

intention to keep the thing itself distinct, however changed its general aspect. The difficulty about such a conclusion arises from the uncertainty of a deduced intention as distinguished from intention expressed. This may have been the intention of the testatrix, or it may not. There is no presumption arising from the conduct of the testatrix. She may have known that the common-law rule prevailed, and still have been satisfied to have it so. Or she may have been ignorant that such a rule ever existed, or that any change in the language of her devise was necessary. Who can tell with any degree of approximate certainty? Intention is the law of wills in Georgia; but the Georgia authorities on this line are chiefly concerned with the interpretation of wills, not in the ascertainment of modifications of doctrines which involve conduct. If the common-law rule applies, then this devise would be adeemed, unless that rule is subject to modification through intention. If this be a true rendition of the rule in Georgia in its last analysis, then manifestly the intention which is so controlling as to set aside a rule must be clear and explicit, and the conclusion from the evidence showing it must not be susceptible of two constructions. In other words, the conclusion must be exclusive. Even in the construction of legacies, when the courts are enjoined to seek diligently for the intention of the testator, and give effect to the same, there must be consistency with the rules of law; and notwithstanding the great power to remodel sentences, the intention must at last be clear and unquestionable; and if the clause as it stands may have effect, it is given that effect, however well satisfied the court may be of a different testamentary intention. Code, § 3324. If this be true when the matter under consideration is specifically subjected to the test of intention, how much more imperative is the necessity for clearness of intention where the subject does not involve the construction of language, but the interpretation of conduct. Nor is this at all affected by the fact that intention enters frequently into the question of ademption. For instance, where money bequeathed is paid over during the lifetime of the testator, the intention with which the money is paid over may well determine whether the testator had in mind the legacy, or gift and legacy were distinct matters. Whatever may be deduced from the general language of *Beall* v. *Blake,* 16 *Ga.* 119, the Code of Georgia expresses substantially the common-law rule, and in sections 3332 and 3333 ex-

presses the exceptions which may well have been suggested by the indignant protest in that case. These exceptions are (the property having been conveyed to another) : 1. Redemption of the property. 2. Abortive conveyance. 3. Exchange for property of like character. 4. Change of investment of a fund. In the last two instances the law deems the intention to substitute merely. Unless some one of these exceptions applies, then the general rule in Georgia, as it was under the common law, is ademption when the specific property is conveyed to another. There is nothing said in any of the sections in regard to the tracing of funds. If there is exchange, it must be for property of like character, and this whether it be swapping or reinvestment. If the legacy is a fund, reinvestment of the fund does not affect the legacy. The case at bar comes within none of these declared exceptions. The property was real. It was sold,—so far as the testatrix was concerned, destroyed. It was not exchanged, either by act of the parties or by her individual act, for property of like character. On the contrary, the proceeds, having become personal property, remained so until she died. She happened to have put it in a certain stock; she could have spent it, or done anything else with it. She did none of the things the code recognizes or the common law recognized as substitution which would avoid ademption. I do not understand that *Beall* v. *Blake* undertakes to declare that the common law in regard to the doctrine of ademption was not law in Georgia at the time it was rendered. The attack was on Lord Thurlow's construction of the common law, which apparently eliminated intention in all events. This was not apparently the common law, as is clearly shown by the excepted instances set out in the opinion in that case. But it would make *Beall* v. *Blake* as extreme as Lord Thurlow if it were to be held that in every instance intention governs. To do this would be to ignore the positive law of the code ; and that may not be done, even if it conflicts with intention. In the presence of positive law, a testator is not helpless, nor is the disposition of his property taken from him. He could add a codicil, if he saw fit. If he elects to allow the item to stand and the property to so change as, under the law of Georgia, to bring about ademption, then the legacy or devise is adeemed. I therefore conclude that the devise in the eleventh item has been adeemed, and the property concerned in the interpleader falls within the operation of the residuary clause.

Even if I had concluded that the intention of the testatrix might govern the situation and modify either the common-law rule or the language of the code, I can not deduce from the facts presented an intention on the part of the testatrix to avoid ademption. The argument is persuasive, and the relations between the testatrix and the residuary legatees are equally suggestive. That the one was of her blood and not in good health might well influence her mind; that the others resided with her, sustained the most intimate relations with her, and were the companions of her last years, constitute, as we know, demands on the heart and frequently of more potency than those based upon mere relationship."

A decree was entered in accordance with the opinion. To this decree Mary T. Lang excepted.

*Saussy & Saussy*, for plaintiff in error.

*Adams & Adams*, contra.

FISH, C. J. (After stating the foregoing facts.) Counsel for the plaintiff in error contend, that, "when the testator conveys to another the specific property bequeathed and does not afterward become possessed of the same," whether such legacy is adeemed depends upon the intention of the testator; and they rely largely upon the case of *Beall* v. *Blake,* 16 *Ga.* 119, as authority to sustain such contention. One of the headnotes to that case is as follows: "Whether a specific legacy, if not illegal, has been adeemed or not, depends on whether the testator's intention has been to adeem it." While this language is broad, it must be construed in connection with the facts of the case then under consideration. A testatrix, in one item, bequeathed $1,000 to a certain legatee; but provided that the legacy should remain in the hands of her executor for four years for the purpose of defraying therefrom the expenses of any lawsuit which might be commenced within that time, by the relatives of the husband of the testatrix, "for the recovery of any of the property left by him to me; and if such suit should terminate in favor of my estate, then the above legacy, after deducting said expenses, to be paid to [the legatee]—if unfavorable, then the said legacy to be null and void." In another item she bequeathed certain negro slaves and other property to another legatee. Thus on the face of the will the first specific legacy mentioned was made subject to the result of a possible litigation which might be prosecuted by the relatives of the husband of the testatrix. It was ex-

pressly coupled with a condition. There was no condition attached to the second specific legacy; and the court held that as to it the intention was to bequeath the property absolutely. After the death of the testatrix the relatives of her husband brought the suit which she had apprehended. Proceedings in equity were had, and a decree was rendered finding and decreeing one half of the estate which had been left by the husband of the testatrix in favor of her legal representatives, and the other half to be divided among the husband's relatives. By agreement of the legatees under the will of the testatrix, this verdict was changed by striking the words "legal representatives of Rebecca Bostwick" (the testatrix), and putting in their place the words, "legatees of Rebecca Bostwick." The relatives of the husband agreed to such a division of the property as placed the negroes composing the specific bequest in the share which the executor of the testatrix was to retain; it was held that the verdict and these agreements amounted to agreeing that these negroes might be administered as if the testatrix had had the entire interest in them. It will thus be seen that in the case under discussion the question arose, not from any conduct on the part of the testatrix after making the will, but upon the fact that she bequeathed the entire title in certain negroes as a specific legacy, when in fact she only had a complete title to a half interest in them, and from the further fact that by virtue of the subsequent litigation and agreements the negroes were delivered to her estate to be administered as if she had in fact held a complete title in them. This is an entirely different question from that arising in a case where a testator owns property but subsequently sells it or places it out of the power of the executor to deliver the legacy. The opinion in that case discussed at considerable length what was deemed an extreme ruling by Lord Thurlow in Ashburner *v.* McGuire, 2 Bro. C. C. 108, and also a number of other cases tending to show that the rule stated by Lord Thurlow was not absolute and without exceptions. This decision was rendered in 1854, prior to the adoption of the Code of 1863. When the law of this State was codified, the codifiers evidently reviewed the entire subject, and sought to lay down both the general rule and the exceptional cases. Of course a testator may provide in his will for a substitution of one piece of property for another in case of a sale of the former; or that if property is sold and the fund reinvested, how the rein-

vestment shall pass, or make like provision. But if he leaves a specific legacy, with no such express provision in the will, and subsequently deals with the property by way of sale or exchange, the law provides what shall be the result. If a testator makes a will containing a specific legacy, and subsequently does certain specified acts, the fact that the law declares what will be the result of those. acts, in the absence of any provision in the will on the subject, in no way conflicts with the rule that the intention of the testator controls in construing his will. It no more conflicts with that rule than does the fact that certain words, such as heirs, heirs of the body, heirs male, fee simple, fee tail, and others, have a certain legal meaning, and, if a testator employs them in making his will, the legal result of using them follows.

The law on this subject, as codified in the Code of 1863, now appears as § 3908 of the Code of 1910, which reads as follows: " A legacy is adeemed or destroyed, wholly or in part, whenever the testator, after making his will during his life, delivers over the property or pays the money bequeathed to the legatee, either expressly or by implication, in lieu of the legacy given; or when the testator conveys to another the specific property bequeathed, and does not afterward become possessed of the same, or otherwise places it out of the power of the executor to deliver over the legacy. If the testator attempts to convey and fails for any cause, the legacy is still valid." And section 3909 reads as follows: " If the testator exchanges the property bequeathed for other of the like character, or merely changes the investment of a fund bequeathed, the law deems the intention to be to substitute the one for the other, and the legacy shall not fail." It will be seen that the general rule that where a testator conveys to another the specific property bequeathed, as stated in section 3908, is coupled in that section with two exceptions: first, where he afterwards becomes possessed of the same; and second, if he attempts to convey and fails for any cause, the legacy is still valid. In the next section the subject of substitution is dealt with. Where the testator leaves the question for the law to determine, it is declared that the law deems the intention to be to substitute one piece of property for the other, and that the legacy shall not fail in two cases: first, if the testator exchanges the property bequeathed for other property of like character; or second, if he merely changes the investment of a fund bequeathed. The

statement that "the law deems the intention to be," etc., shows that if the testator makes no provision in his will on the subject, expressive of his intent in case of a sale or the like, the law declares what it deems is his legal intent; or, in other words, provides what shall be the result in such case. This excludes the idea that in every case what the law deems to be the intent has no force, and that the courts will go afield hunting for an intent expressed in parol or to be gathered from conduct or acts of the testator after the making of the will. In the former of the two sections quoted there are certain cases where parol evidence is admissible. Thus it is stated that if a testator, after making his will, delivers over the property or pays the money bequeathed to the legatee, "either expressly or by implication, in lieu of the legacy given." But this is very different from the question arising under a sale and reinvestment by a testator, after the making of his will. In the case before us none of the four instances provided in the two cited sections of the code occurred. After selling the property, the testatrix did not become possessed of it again. She did not attempt to convey it and fail for any cause to do so. She did not exchange the property bequeathed for other property of like character. She sold real estate and invested a part of the proceeds in personalty. It is immaterial that she thought the personalty would produce a better income than the realty. The obtaining of more income may have been a satisfactory reason moving the testatrix to adeem the legacy, but did not constitute the transaction an exchange of one piece of property for another of like character. Nor did the testatrix bequeath a fund and merely change the investment of it. It was not a bequest of a fund, but a devise of realty. There are no words in the will giving to the legatee not only the realty but the proceeds of any sale of it. The sale of real property and the investment of a portion of the proceeds thereof in personal property, standing alone, can not fall within the provision as to changing the investment of a fund bequeathed.

Several of the decisions of this court have been cited as tending to hold a doctrine different from that now announced, viz.: *Smith* v. *Smith*, 23 *Ga.* 21; *Reid* v. *Reid*, 68 *Ga.* 589; *Clayton* v. *Akin*, 38 *Ga.* 333 (95 Am. D. 393) ; *Whitlock* v. *Vann*, Ib. 562; *Worrill* v. *Gill*, 46 *Ga.* 482. But in each of them it will be found that the legacy which was declared not to be adeemed was either held not to

be a specific legacy, or was construed as including not only land but proceeds in case of sale; or they were dependent on other facts which plainly distinguish them from the present case.

*Judgment affirmed. All the Justices concur, except Atkinson, J., disqualified, and Hill, J., not presiding.*