W. B. FORD *v.* ELLENDER COTTRELL *et al.*
ELLENDER COTTRELL *v.* W. B. FORD.*

(*Knoxville.*   September Term, 1918.)

1. **WILLS.** ''Demonstrative Legacy.''  ''Specific Legacy.''

Under will bequeathing to a sister the rents of a house and lot during her natural life, house and lot to be sold at sister's death and proceeds given to an orphan's home, the legacy to the home was not "demonstrative," but "specific." (*Post, pp.* 175-178.)

Case cited and approved:   Manlove v. Gaut, 2 Tenn. Ch. App., 410.

Case cited and distinguished:   American Trust Co. v. Balfour, 138 Tenn., 385.

2. **WILLS.** Date of taking effect.

Will does not take effect until death of testator.   (*Post, p.* 178.)

3. **WILLS.** Sale of property.  ''Ademption.''  Specific legacy.

Since, under will bequeathing to a sister rents of a house and lot during her natural life, house and lot to be sold at sister's death and proceeds given to an orphan's home, a sale of the house and lot during testatrix's lifetime worked an -"ademption" as to sister, it also worked an ademption as to the home; the legacy to the sister taking precedence and priority in time and right to that of the home. (*Post, pp.* 179, 180.)

4. **WILLS.** Ademption.  Effect.

There being an ademption of legacies by testatrix's sale of house and lot in her lifetime, the proceeds constitute a part of general personal estate, and should, along with other personalty, be applied to payment of debts and general legacies under the terms of the will.  (*Post, pp.* 180-181.)

---

*On disposal, loss or destruction of subject matter, or payment of debt, as ademption of specific legacy or devise, see note in 40 L. R. A. (N. S.), 542.

Cases cited and approved: American Trust Co. v. Balfour, 138 Tenn., 385; McNaughton v. McNaughton, 34 N. Y., 201; Lang v. Vaughn, 137 Ga., 671; Manlove v. Gaut, 2 Ch. App., 410; Ametrano v. Downs, 170 N. Y., 388.

5. **WILLS. Specific legacies. Rights of legatees. Subrogation.**

Where specific legacies are consumed by payment of debts, legatees are entitled by way of subrogation to the rights of creditors to go upon the undevised real estate for reimbursement to the extent that the personalty specifically bequeathed was encroached upon or consumed. (*Post, p.* 181.)

Cases cited and approved: Alexander v. Miller, 54 Tenn., 65; Hope v. Wilkinson, 82 Tenn., 21; Douglass v. Baber, 83 Tenn., 651; Overton v. Lea, 108 Tenn., 505.

6. **EXECUTORS AND ADMINISTRATORS.** Payment of legacies. Debts.

A general legacy of a certain amount of money is not to be paid until all debts are paid out of the personal estate, the latter being the primary fund or property for the payment of debts. (*Post, p.* 181.)

7. **WILLS. General Legacy. Payment from undevised realty.**

A general legacy of a certain amount of money cannot be paid out of proceeds from undevised real estate, unless there is an intention to do so expressly declared or clearly inferred from the language of the will. (*Post, p.* 181.)

Case cited and approved: Evans v. Beaumont, 84 Tenn., 713.

8. **WILLS. Property undevised. Right of sole heir.**

Where will providing for payment of debts and for a number of general pecuniary legacies contained no residuary clause and made no mention of real estate in question, testator died intestate as to such realty and it descended to her sole heir at law. (*Post, pp.* 181-183.)

9. **WILLS. Payment of general pecuniary legacies. Property subject.**

Under will providing for payment of debts and personal expenses and of several general pecuniary legacies, *held*, that there was no intention plainly expressed and reasonably implied that lega-

Ford v. Cottrell.

cies should be provided for otherwise than from personal estate, so that court erred in holding that realty as to which testatrix died intestate was subject to payment of such legacies. (*Post.* *pp.* 181-183.)

10. **EXECUTORS AND ADMINISTRATORS.** Payment of debts. Resort to realty.

Realty as to which testatrix died intestate could not be subjected to payment of debts, where personalty was sufficient for that purpose; a contrary intention not appearing from the will. (*Post,* *pp.* 181-183.)

FROM KNOX.

Appeal from the Chancery Court of Knox County. HON. WILL D. WRIGHT, Chancellor.

W. B. FORD and JOHNSON & Cox, for appellant.

GREEN, WEBB & TATE and R. A. BROWN, for appellee.

MR. THAD. A. Cox, Special Judge, delivered the opinion of the Court.

These consolidated causes involve the construction of the will of Matilda Ford, deceased. W. B. Ford is the executor of the said Matilda Ford, the latter having died at her home in Knox county, Tenn., on June 23, 1917, seized and possessed of a personal estate valued at about $8,000, and a house and lot on Rutledge Pike, in the suburbs of Knoxville; the last will and testament being dated August 8, 1913.

By the terms of the will, testator provided for the payment of her debts and for a number of legacies. She

did not dispose of the house and lot referred to. There is no residuary clause in the will, and she therefore died intestate as to the house and lot and it descended to her sister, Ellender Cottrell, who is her sole heir at law.

The first bill filed herein was that of Ellender Cottrell against W. B. Ford, executor, on October 16, 1917, to eject said executor from the house and lot on Rutledge Pike, above referred to. The bill of W. B. Ford, executor, was filed November 21, 1917, against Ellender Cottrell and all the legatees mentioned in the will, asking for a construction of the will.

After providing for the payment of all debts and funeral expenses out of any money that testator might die seized and possessed of, or might first come into the hands of the executor, the will then directs the payment of nine general pecuniary legacies, five of which were to as many different relatives of the testator, amounting to $500 each, and four of which were to as many different mission boards of the Southern Baptist Convention, of $1,000 each, thus making a total of $6,500.

All of the household and kitchen furniture was also bequeathed to Ellender Cottrell, and, in addition, she is bequeathed the rents of one house and lot in South Knoxville, during her natural life, "she to receive said rents after the taxes, insurance and repairs have been paid for out of the first rents received each year in which said taxes, insurance and repairs are due," and, at her death, the will provides the house and lot is to be sold and the proceeds given to the Baptist's Orphans' Home at Nashville, Tenn.

The will then directs that certain monuments be erected by the executor, and provides, in connection therewith:

"That necessary funds for same, if not sufficient in the hands of my executor, be reserved out of the bequests herein provided, in proportionate amounts, to erect same, before said bequests are distributed to the parties herein named."

The master's report shows the personal assets of the deceased to be $8,228.50, and debts $967.25, and the total amount of the legacies and bequests to be $7,000. The master reports a bequest to Hazen Wallace of $500, which does not appear in the will in the record before us. In addition to the liabilities above mentioned, the master reports $300 attorney's fees allowed by the Chancellor to counsel for the executor, and whatever sum may be expended for the erection of the monument mentioned in the will, together with the costs of this cause and another small item for stenographer's fees.

The house and lot, the rents from which were bequeathed to the said Ellender Cottrell, as above set forth under the second paragraph of the will, and the proceeds from the sale of which, at the death of Ellender Cottrell, were bequeathed to the Baptist Orphans' Home at Nashville, Tenn., was sold during the life of the testator for the sum of $2,000, $100 of which 'the testator collected and spent, or retained, during her life, and for the balance of the purchase money seventy-six notes were executed by the purchasers, payable to the order of the said Matilda Ford, amounting to $25 each, due and payable on the 1st day of each month,

with interest from date. The proceeds from this property, consisting of these notes, is included in the assets enumerated above by the master as coming into the hands of the executor.

The questions which therefore arise are:

(1) Is the board of managers, Tennessee Baptist Orphans' Home, entitled to the proceeds derived from the sale of the house and lot in question, under the bequest in paragraph 2 of the will, as above stated, or was there an ademption by the sale of said property by the testator before her death?

(2) If said board is entitled to these proceeds, and if an ademption of the legacy was not effected by the sale of said property, then there will not be sufficient funds to pay the debts of the testator and satisfy the money legacies provided for in the will; and the further question then arises as to whether or not the house and lot on Rutledge Pike should be sold and the proceeds subjected to the payment of said legacies.

These are the questions involved, and it is not necessary to review the pleadings showing the filing of the various bills, answers, cross-bills, etc.; but it is sufficient to state that all of the parties interested are before the court and contending for constructions favorable to their respective interests.

The Chancellor held that the legacy to the Baptist Orphans' Home at Nashville (which will hereinafter be referred to as the board), under the second, paragraph of the will, is a demonstrative legacy, and that the sale of the real estate by the testator did not work an ademption of the same, and that the board is entitled to

the proceeds of said sale; and he expressly held, on the other hand, that there was an ademption in so far as the legacy to Ellender Cottrell of the rents from the property during the life of the latter was concerned. Recovery was awarded against the executor in favor of the board at Nashville for the amount which came into the hands of the executor as the proceeds from the sale of said property, amounting to $1,900. The Chancellor also held that the said Matilda Ford died intestate as to the house and lot on Rutledge Pike and decreed that said property be sold and the proceeds from the same be applied upon the payment of the debts and legacies provided for in the will, there being a deficiency of personal assets to pay said debts and legacies; the Chancellor holding that said real estate was the primary property out of which said debts and legacies should be paid and satisfied. He dismissed the bill filed by Ellender Cottrell against the executor, with costs.

The first question to be considered is, therefore, whether or not the decree of the Chancellor was correct in adjudging that the sale of the house and lot, referred to in the second paragraph of the will, operated as an ademption of the legacy of the rents to Ellender Cottrell during her lifetime, and adjudging that the same act did not operate as an ademption of the legacy to the Baptist Orphans' Home, of the proceeds from the sale of said property at the death of the said Ellender Cottrell. The Chancellor having taken the view that the legacy was what is termed a "demonstrative legacy," and that the proceeds were in existence at the

death of the testator, he held that the sale of the property during her lifetime did not operate to deprive the Baptist board of its right to same, as hereinabove stated.

In the first place, we do not think that the legacy in question was a demonstrative legacy, but that it was a specific legacy.

"To make a legacy demonstrative it must appear to have been the intention of the testator to give the amount to the legatee in any event and not merely to charge the gift upon one fund alone; for, in the latter case, the legacy would be extinguished by the extinguishment of the fund." Pritchard on Wills, section 461.

Again, for definition as to when an "ademption" takes place: "An ademption of a legacy is effected when by some act of the testator its subject-matter has ceased to exist in the form in which it is described in the will so that on his death there is nothing answering the description to be given to the beneficiary." Cyc., vol. 40, p. 1914.

In the last-named work, we further find the following: "A sale of personal property bequeathed, or a conveyance of land bequeathed, causes an ademption, although it would be possible to follow the proceeds of such sale, and the same result may follow from a sale, or conveyance, of property upon which a specific legacy is charged. Where part of the property bequeathed or devised is sold or conveyed the legacy is adeemed *pro tanto,* but not revoked as to the remainder of the property." Id., vol. 40, pp. 1919, 1920.

Mr. Pritchard, in his work on Wills, further says: "Whatever, therefore, puts an end to a specific claim so that at the testator's death it does not form a part of his estate is an ademption of the legacy. If the testator never had the article purported to be specifically bequeathed, or if he had it at the time of making the will, but it has afterwards been consumed or used or lost by death or destruction, etc., . . . the legatee's rights to it are destroyed." Id., section 462.

In *American Trust Co.* v. *Balfour,* 138 Tenn., 385, 388, 198 S. W., 70 (L. R. A., 1918D, 536), this court said: "A 'specific legacy' is a bequest of a specific article or particular fund or designated part of the testator's estate, distinguished from all others of the same nature"—citing *Manlove* v. *Gaut,* 2 Tenn. Ch. App., 410, 445; 4 Words and Phrases (Second Series), p. 651.

And, in said case of *Manlove* v. *Gaut,* the bequest was to the proceeds of a designated storehouse, which might be left after the payment of a mortgage thereon, and the court of chancery appeals held it to be a specific bequest. It is said, also, in the case of *American Trust Co.* v. *Balfour,* as to an ademption of a specific legacy, that:

It is "the extinction, *alienation,* withdrawal, or satisfaction of the legacy, by some act of the testator by which an intention to revoke is indicated; the doing of some act with regard to the subject-matter which interferes with the operation of the will."

The language of the will in question in the case before us is as follows:

"Second. I will and bequeath unto my sister Ellen Cottrell, five hundred (500) dollars in money and all the household and kitchen furniture that I may own at the time of my death, also the rents of one house and lot in South Knoxville, during her natural life, she to receive said rents after the taxes, insurance and repairs have been paid out of the first rents received each year in which said taxes, insurance and repairs are due, and at the death of my sister, Ellen Cottrell, I direct that said house and lot be sold and the proceeds be given to the Baptist Orphans' Home at Nashville, Tennessee."

This, we think, is a "specific legacy." The property bequeathed is specifically named and mentioned: First, to Ellender Cottrell, the rents during her natural life, from the house and lot in South Knoxville, after the payment of taxes, insurance, etc. Second, to the board at Nashville, the proceeds from a sale of said property, said sale to be made at the death of Ellender Cottrell. The will, of course, did not take effect until the death of the testator. At the death of the latter, the specific property in question had been sold by her and was not, therefore, in existence. The fact that had said property remained in existence as contemplated by the will, and had, at a later, indefinite date (that is, at the death of Ellender Cottrell), been sold and the board at Nashville have taken under the will the proceeds of such sale, could not operate to create a right to the proceeds of a sale of the property made before the death of the testator and to vest by reason thereof and in direct opposition and antagonism to the provisions of the will.

In the second place, while we think the Chancellor was correct in holding that there was an ademption of the legacy to Ellender Cottrell, we think he was in error in holding that there was no ademption also of the legacy to the board of orphans' home at Nashville. The holding of the Chancellor in this regard, we think, is inconsistent as a matter of legal effect. If there was an ademption as to one, there was an ademption as to the other, because the legacy to the Baptist Board was not to take effect until the death of Ellender Cottrell. The intent and purpose of the testator to bequeath to the orphans' home was no stronger than the intent and purpose to bequeath to Ellender Cottrell; in fact, it was secondary in point of time; and the legal effect of the Chancellor's decree is that the act of the testator was to deprive the one and not deprive the other, and, by the taking from the one who was of first and primary consideration in her will, the bequest to the other, which was of secondary consideration, was accelerated. Such an intent is not only not manifest by the provisions of the will, but is expressly contrary to it. This is shown by the fact that the bequest to the board at Nashville was not to take effect until the death of Ellender Cottrell. Her legacy in the same property took precedence and priority in time and right to that of the board. The fact that the proceeds from the property were in existence at the death of the testator could not operate to entitle the board thereto, when, by the terms of the will itself, it was not to have said proceeds until the death of Ellender Cottrell. As a test, let us suppose, instead of this bequest, there had

been a devise of the realty to Ellender Cottrell for life, and at her death remainder to the board at Nashville? If the property had been sold by the testator during her life, could there be any question as to the cutting off of interest under the will in both the life tenant and the remainderman? Again, the fact that the testator collected the $100 of the purchase money, and applied it to her own use negatives any intention to effect such a result as was held by the Chancellor.

We therefore hold that, by the sale of this property by the testator during her lifetime, there was an ademption of the legacies provided for in the second paragraph of the will, both to Ellender Cottrell during her life as to the rents, and at her death to the board at Nashville to the proceeds of a sale at that time of the property in question. The proceeds from this property, consisting of the notes for deferred purchase money, constitute a part of the general personal estate of the testator in the hands of the executor, and should, along with the other personal property, be applied to the payment of the debts and general legacies under the terms of the will. See *American Trust Co.* v. *Belfour,* supra; *Mc-Naughton* v. *McNaughton,* 34 N. Y., 201; *Lang* v. *Vaughn,* 137 Ga., 671, 74 S. E., 270, 40 L. R. A. (N. S.), 542, and note, Ann. Cas., 1913B, 52; *Manlove* v. *Gaut,* 2 Ch. App., 410, 445; *Ametrano* v. *Downs,* 170 N. Y., 388, 63 N. E., 340, 58 L. R. A., 719, 88 Am. St. Rep., 671.

The second question is as to whether or not the Chancellor was correct in decreeing a general sale of the house and lot on Rutledge Pike.

We think the Chancellor was also in error in this.

Where specific legacies are bequeathed and are consumed by the payment of debts of the testator, the legatees are entitled, by way of subrogation, to the rights of creditors, to go upon the undevised real estate for reimbursement to the extent that the personalty specifically bequeathed was encroached upon, or consumed. *Alexander* v. *Miller,* 7 Heisk., 65; *Hope* v. *Wilkinson,* 14 Lea, 21, 52 Am. Rep., 149; *Douglass* v. *Baber,* 15 Lea, 651; *Overton* v. *Lea,* 108 Tenn., 505, 68 S. W., 250.

But where a legacy is a general one, of a certain amount of money, it is not to be paid until all the debts are paid out of the personal estate, the latter being the primary fund or property for the payment of the debts, and it cannot be chargeable to, or paid out of the proceeds from, undevised real estate, unless there is an intention to do so, expressly declared or clearly inferred from the language of the will. *Evans* v. *Beaumont,* 16 Lea, 713.

In the case before us, the first item of the will provides as follows: "I direct that all my debts and funeral expenses be paid out of any money that I may die seized and possessed of, or may first come into the hands of my executor."

Then follows the general pecuniary bequests. After that comes the direction that monuments be erected, providing that, if there are not sufficient funds, the same be taken from the general pecuniary legacies. There is nothing said about the house and lot on Rut-

ledge Pike, The testator died intestate as to this property, and it therefore descended to her sole heir at law, Ellender Cottrell, and could not and should not be sold, under the facts of this case, except for the payment of debts in case of a deficiency of personal property for the payment of same. As shown by the master's report, the personal estate is much greater than the amount of the indebtedness. In fact, it would appear that the personal estate will be sufficient to pay all of the debts of the testator and, in addition, discharge the general pecuniary legacies provided for in the will.

The legacies in the will in question were and are general in their nature. There is no intention, either plainly expressed or reasonably to be implied, from the terms of the will, that the same are to be provided for otherwise than from the personal estate. The legacies should be paid out of the personal estate and not out of the real estate. We think the Chancellor erred in holding that the house and lot on Rutledge Pike constituted the primary property out of which the debts and legacies should be paid, and in ordering a sale of said property and dismissing the bill of Ellender Cottrell at her cost.

We have examined the authorities to which we have been referred by counsel for the executor and the Mission Boards and Baptist Orphans' Home Board, at Nashville, but do not regard them as applicable to, or controlling, the questions involved in this case.

For the reasons and to the extent herein stated, the decree of the Chancellor is reversed.

All of the costs of the consolidated causes will be paid by the executor out of the assets of the estate in his hands, as a part of the debts of the estate, and the cause is remanded for such further proceedings as may be necessary; same to be had in accordance with this opinion.