### 29181. CHANDLER v. OWEN et al.

Hall, Justice.

In a suit by Maude Walker Graham ("plaintiff"),

long-term nurse and housekeeper to Mrs. Franklin ("testatrix") against Mrs. Franklin's executors to recover out of the estate on an alleged contract with Mrs. Franklin for plaintiff's services, F. C. Chandler intervened as next friend of two of Mrs. Franklin's nieces, legatees under her will. The intervention was grounded in Chandler's assertion that if plaintiff recovered on her claim there would be nothing left in the estate for the nieces. Plaintiff moved for summary judgment against Chandler on grounds that the legacy to the nieces had been adeemed by extinction, and therefore they had no interest in her suit against the executors. The motion was granted; the trial court found as a matter of law that ademption had occurred; and Chandler appeals. No one doubts that we have here a specific legacy to which, and only to which, the doctrine of ademption can apply. *Woodall v. First Nat. Bank,* 223 Ga. 688, 690 (157 SE2d 261). However, we reverse, ruling that ademption has not occurred, and therefore a ground for Chandler's intervention exists. The merits of plaintiff's suit against the estate are, of course, not involved here.

The legacy in question is contained in Items 3 and 4 of the will, as follows:

"Item . . . Three

"After my death it is my Will and request and I do so hereby direct that the property described as:

"My house and lot fronting 60 feet on Savannah Street, in the City of Toccoa, Georgia, being No. 119 Savannah Street, and known as the Mrs. Rollo Franklin dwelling . . .

be sold by my Executors at private sale and subject to approval of the Ordinary of Stephens County, Georgia. My Will authorizing a private sale is because I do not want any of my property sold in front of the Courthouse door.

"Item . . . Four

"It is my Will that the money received from the sale of the house and lot above described be invested in U. S. Government Bonds then to be equally divided between my two great nieces, to-wit: Laura Jean Ramsay and Laura Ann Chandler. If Laura Jean Ramsay is not living

at the time of my death then her part to go to her sister, Ellen Ramsay. Should Laura Ann Chandler not be living at the time of my death then her part is to go to her sister, Heather Chandler. It is also my Will that these bonds and the funds received from them be used for their education."

The ademption is claimed to flow from the fact that a few months prior to her death, and less than a year after making the will, Mrs. Franklin sold the house and lot for some $15,000, placed these funds in a checking account, added to them some $2,000 from other sources, and with this total purchased a bank certificate of deposit which remained among her assets at her death. Plaintiff's uncontradicted affidavit set forth these facts.

The statutes pertinent to the question are Code Ann. §§ 113-817 and 113-818: "113-817. (3908) *Ademption or destruction of legacy.* A legacy is adeemed or destroyed, wholly or in part, whenever the testator delivers over the property or pays the money bequeathed to the legatee, either expressly or by implication, in lieu of the legacy given; or when the testator conveys to another the specific property bequeathed, and does not afterward become possessed of the same, or otherwise places it out of the power of the executor to deliver over the legacy. If the testator attempts to convey and fails for any cause, the legacy is still valid. 113-818. (3909) *Substitution.* If the testator exchanges the property bequeathed for other of the like character, or merely changes the investment of a fund bequeathed, the law deems the intention to be to substitute the one for the other, and the legacy shall not fail." See generally Redfearn on Wills, § 155 (3d Ed.). Plaintiff contends that Mrs. Franklin's selling the property and putting the proceeds into some medium other than government bonds constituted an ademption, and that none of four exceptions applies, the exceptions being (1) reacquisition of the property, (2) failure of the conveyance, (3) exchange of the property for other property of like character, and (4) change in the investment of a fund bequeathed.

We note initially that the legacy here refers to real property and to the proceeds from its sale. Therefore, we

do not have the situation presented by *Woodall v. First Nat. Bank,* 223 Ga. 688, supra; *Thompson v. Long,* 202 Ga. 718 (44 SE2d 651); *Moncrief v. Shuman,* 169 Ga. 217 (150 SE 98); and *Lang v. Vaughn,* 137 Ga. 671 (74 SE 270, 40 LRA (NS) 542, AC 1913B 52), in all of which ademption was held to have occurred when after making the will the testator disposed of the property; because in those four cases the will made no bequest of proceeds but contemplated only the specific item itself. As the court said in *Lang* (p. 680), "There are no words in the will giving to the legatee not only the realty but the proceeds of any sale of it." Therefore, these cases are not authority for our decision.

The subject of ademption of legacies by extinction where proceeds are bequeathed has not been much illuminated by judicial decisions in Georgia. Overviews of precedent in other jurisdictions show conflicting approaches. "In some jurisdictions the courts have held that bequests or legacies of or from the proceeds of property, whether real estate or personalty, are not adeemed by a disposition of the property by the testator, or someone acting for him, during his lifetime, and subsequent receipt of, and dealings with, such proceeds, where the proceeds may be traced and identified among the assets of the testator's estate. . . In other jurisdictions the courts have held that bequests of or from the proceeds of property are adeemed where the testator has disposed of the property and dealt with the proceeds, or retained them prior to his death. This result is sometimes justified in the cases by the circumstances that the bequests were not of proceeds to arise from a disposition of the property by the testator during his lifetime, but were bequests of or from proceeds of sales or dispositions intended by the testator to be made by his fiduciaries after his death." 57 AmJur 1093, Wills, § 1595 (1948). See generally, Annot., Ademption of Bequest of Proceeds of Property, 165 ALR 1032 (1946).

Ademption accomplishes a harsh result, and can completely cancel a testator's intentions regarding the disposition of his property. "Generally, a testator wishes to confer an economic benefit, and intends to pass along an equivalent slice of value of his estate to the beneficiary

regardless of whether or not he remains the owner of the particular property at his death. Only in the rare case would a testator desire that his gift be contingent upon his ownership of the particular subject matter at his death." Chaffin, The Time Gap in Wills, 6 Ga. L. Rev. 649, 680 (1972). Where the will devises property and proceeds from its sale, the testator's intention in this regard is sufficiently clear that ademption should not lightly be found for technical reasons. And, it should be noted with reference to intent, the testator's intent with reference to whether his subsequent acts will constitute ademption is irrelevant[1]; but his intention in making the will provision with reference to whether a sale of the property shall constitute an ademption is relevant and may be gathered from the language of the will. *Beall v. Blake,* 16 Ga. 119. "Thus, Lord Thurlow's rule [that intention is irrelevant] does not preclude going into the question of what the testator meant in the designation or description of the subject matter as expressed in the will." Chaffin, supra, 6 Ga. L. Rev., p. 681.

Though it is not precisely similar to our situation, the decision in *Reed v. Reed,* 68 Ga. 589 leads to the conclusion that ademption has not occurred here. In that case, a devise was made "to my son, Milton . . ." of a "lot . . . containing about twenty-two acres. The mill and five acres of this lot has been sold to Mr. Grantham. Milton will receive the proceeds of this sale." Before testator's death, the sale to Grantham was canceled; the testator took the property back and subsequently sold a portion of it, namely an engine and fixtures, to Cowen. In the executrice's bill asking direction, the contention was made that the sale to Cowen was entirely different from anything contemplated in the will, and that by dealing with his property in this fashion not contemplated by the

---

[1] We refer here to the testator's intention with regard to ademption by extinction and not to ademption by satisfaction. "The determination of whether or not a legacy has been adeemed by satisfaction is based upon the testator's intention at the time of the inter vivos gift." Chaffin, supra, 6 Ga. L. Rev., p. 665.

will, the testator had adeemed the legacy. The court swept this contention aside, specifically holding that "The mentioning of the name of Grantham was incidental and immaterial to the bequest," and that "the clear intention of the testator was that his beneficiary was to have the mill property, or the proceeds of the sale, and that regardless of the fact as to whether the same were realized from Grantham or from another purchaser." 68 Ga. 590. The court clearly indicated that where the proceeds lay within the power of the executrice to deliver, she must do so and no ademption occurred:

"It is true that a legacy is adeemed when the testator conveys to another the specific property bequeathed, or otherwise places it out of the power of the executor to deliver over the legacy.

"In this case there was such provision by the will as secured without fail either the property *or the proceeds* of the sale to the legatee.

"There existed *but one possible chance for its ademption, and that was the placing the property or the proceeds thereof out of the power of the executor to deliver the same. That contingency did not happen; the property in part and proceeds in part are in the hands of the executrix; she can deliver both over, and it is her duty to do so."* 68 Ga. 591. (Emphasis supplied.) Nothing in the *Reed* decision is incompatible with our present statutes set forth above.

By analogy to *Reed v. Reed,* we hold that the proceeds of the sale of Mrs. Franklin's property lie within the power of her executors to deliver, and therefore no ademption has occurred. In our view it is immaterial that Mrs. Franklin purchased with the money a certificate of deposit and not government bonds. Looking at her will in an attempt to discern her intention with reference to this gift, it is apparent that she wished to dedicate the proceeds of perhaps her largest asset to the education of her nieces. The will indicates no other asset she had which would be a source of substantial ready funds, and the list of assets prepared by her executors confirms that the proceeds from the sale of this property make up the bulk of the estate. If, as plaintiff's affidavit indicates, Mrs. Franklin was compelled in her last illness to

anticipate that she might need to draw upon this source of funds to maintain herself, we do not think this situation is incompatible with her desire that to the extent to which the proceeds remained at her death her nieces should have them, barring always their exhaustion by debts of the estate such as that claimed by plaintiff here. Of course, the full amount remained untouched in the certificate of deposit.

Because there was no ademption here, the trial court erred in granting summary judgment for plaintiff.

*Judgment reversed. All the Justices concur.*

ARGUED SEPTEMBER 10, 1974 — DECIDED OCTOBER 8, 1974.

*McClure, Ramsay & Struble, John A. Dickerson,* for appellant.

*Gross, Stowe & Shepherd, Millard B. Shepherd, Jr., Linton K. Crawford,* for appellees.